## HICKS *v.* BRANTLEY.

1. A right of action for a malicious prosecution exists only when the prosecution is the result of a desire to injure the accused. In such an action malice against the accused may be inferred from want of probable cause; but the want of probable cause will not be inferred, even though malice is shown to have existed.

2. When the circumstances show that no reasonable grounds for the prosecution exist, the want of probable cause is established; and while it is competent in such action to show that the prosecution was undertaken on the advice of counsel, to show that there was probable cause for such prosecution, the fact that such advice was given is only one of the circumstances of the case for consideration by the jury.

(*a*) When, however, a person in good faith truthfully communicates to the solicitor-general all facts known to the former in relation to a criminal charge against another, and is advised that the facts as stated constitute an indictable offense, and such person becomes the prosecutor on an indictment prepared and submitted to the grand jury by such officer, he can not be held liable in damages for a malicious prosecution at the suit of the accused, even though on the trial under the indictment it appears that the facts as stated do not constitute a crime and that the defendant was not in fact guilty of any offense.

Argued June 28, — Decided August 10, 1897.

Action for damages. Before Judge Hart. Laurens superior court. December 14, 1896.

Brantley brought suit against Hicks for malicious prosecution. Hicks pleaded justification, and set up that in prosecuting the plaintiff he had acted under the advice of the solicitor-general, after full disclosure of the truth of the case. The trial resulted in a verdict in favor of the plaintiff for $400. The defendant made a motion for a new trial, which was overruled, and he excepted. The motion alleged, that the verdict was contrary to law and the evidence, and that the court erred in refusing to charge as follows:

"If the defendant made to the solicitor-general a truthful statement of the evidence in the case, giving the names of witnesses who furnished him the information, and the solicitor-general made a mistake, either in classifying of the offense or in advising that any offense had been committed, the defendant Dr. Hicks is not responsible for the mistake of the solicitor-

general, and if he acted in good faith and without malice, and upon the advice of the solicitor-general, the law relieves him from all liability.

"The advice of counsel, though of itself no protection to the defendant in a suit for a malicious prosecution, is a circumstance tending to show bona fide absence of malice and the existence of probable cause. That of itself, viz. the advice of counsel, can not be a complete protection to the defendant, but goes before the jury as a circumstance which may, according to the facts of each case, relieve the defendant or make the damages nominal, or mitigate them more or less.

"It is conceded that the prosecution upon which the present action is based was by indictment; and where an indictment is found, this of itself is prima facie evidence of probable cause, but it may be rebutted by other testimony showing that there was no probable cause for the prosecution. However, the bare fact of the acquittal of the defendant, without more, is insufficient to remove the prima facie presumption of probable cause raised by the return of the indictment."

It appears from the evidence, that the plaintiff was indicted for simple larceny, the property alleged to have been taken being a bale of cotton containing 450 pounds of lint-cotton of the value of $50 "of the personal goods of Henry Hicks and John D. Page." At the time when the indictment was found, Hicks went to the solicitor-general and stated to him, in substance, that he had rented land to Brantley, who was to pay him a bale of cotton weighing 450 pounds, to be delivered at Blackshear's mill; that he received word through Hicks's son Tom that Brantley had left the cotton for him at the mill, and for him to send and get it; that J. D. Horn told Hicks that Brantley had moved the cotton away in the nighttime, and when he (Hicks) sent for the cotton it was not there. He asked the solicitor-general's advice. According to the testimony of the solicitor-general, Hicks further stated that Brantley had carried off the cotton on account of damage done him by stock, and that he (Brantley) had told Hicks that he had got the cotton and sold it. The solicitor-general, after hearing Hicks's statement, advised him to prosecute Brantley for larceny; and

prepared an indictment and sent it before the grand jury. Hicks testified that he did not tell the solicitor-general to prepare the indictment for any particular offense, and did not know for what offense it was drawn. He appeared also before the grand jury and there testified to his contract with Brantley as he had stated it to the solicitor-general; that he had received word through his son Tom and a negro that the cotton had been delivered at the mill by Brantley, and to come and get it; and that he went to get it and it was not there. J. D. Horn testified before the grand jury, that Brantley went in the night and secretly hauled away the bale of cotton. A member of the grand jury testified that it was mainly upon this testimony that a true bill was returned. Brantley was tried and was acquitted; after which he instituted the present suit. He testified, that when he applied to Hicks to rent the land he told Hicks that he would give him a bale of cotton if he would make a good fence, and that Hicks said he would, but did not make the fence. He had a bad fence. He saw Hicks in the fall of the year and asked him to fix the fence, and he failed and refused to do so. Cattle were in the field all the year, and the stock ate about two bales of his cotton. In the fall of the year, or early spring of the next year, Hicks asked him about the settlement of his rent, and he told Hicks that when he settled for the damages he (Brantley) would pay the rent. He had five bales of cotton ginned at Blackshear's mill. Four bales of the cotton were hauled off for him by Dick Blackshear, and he left one bale to pay Guyton for a guano debt, and Guyton got it. He never had any settlement with Hicks for his rent. He sent Hicks word by Hicks's son Tom to meet him at Blackshear's mill to have a settlement about the rent, but he did not come. Plaintiff paid out in defense of the criminal case $50 attorney's fees, and attended court eight or ten times, and his expenses were about $5 per day. According to the defendant's testimony, he made no agreement to fix up the fence for Brantley, and the facts were as stated by him to the solicitor-general and the grand jury. The land was rented by him for himself and John D. Page. He testified that he had no malice against Brantley, and did not institute the prose-

cution from any malicious motive. Before the prosecution was instituted, he told Brantley he must have the money or he would lay the matter before the grand jury. He prosecuted Brantley because he did not collect his rent. Thomas Hicks testified that Brantley told him that a bale of cotton had been left for his father at Blackshear's mill, and to tell his father to come and get it; that it was rent-cotton. Witness told him to leave it, and he said all right; and witness communicated this to his father. His father went for it and could not find it. Thomas Blackshear testified that he ginned on one occasion five bales of cotton for Brantley and Brantley hired witness's brother Dick to haul four bales to town. Brantley stayed at the mill, saying he expected Hicks to be over for a settlement; that he had the cotton ready for him. He stayed there all day and came back the next day, but Hicks did not come. Brantley said he was ready to turn over to Hicks the rent-cotton, if Hicks would satisfy him for damages done to his cotton by stock.

*Anderson, Felder & Davis, J. B. Hicks* and *Evans & Evans,* for plaintiff in error.

*A. F. Daley,* contra.

LITTLE, J. Brantley brought an action to recover damages against Hicks for a malicious prosecution. There was a verdict for the plaintiff, and a motion for a new trial, which was overruled. The motion was on the general grounds, and alleged error in giving to the jury certain charges, and in refusing to charge as requested. The legal questions involved are dealt with by us as indicated in the headnotes of the case, and as therein set out.

1. A cause of action where damages are sustained by one in consequence of a prosecution carried on maliciously and without any probable cause against him, is given by the common law against the person instituting such prosecution, and is specially recognized by our statute. Civil Code, § 648. To recover in such an action, it is necessary that both malice and want of probable cause should concur. In a legal sense, any unlawful act which is done wilfully and purposely to the injury of another, is, as against that person, malicious. 1 Hil-

liard on Torts, 446. To establish malice sufficient to author-
ize a recovery in cases of this kind, it is not necessary to prove
the existence of personal hatred, ill-will, or motives of revenge
on the part of the prosecutor toward the accused. Haddrick
*v.* Heslah, 12 Ad. & El. N. S. 267. Mr. Newell, in his work
on Malicious Prosecution, p. 6, § 5, defines the action to be "a
judicial proceeding instituted by one person against another,
from wrongful or improper motives, and without probable
cause to sustain it," and gives to the term "malicious prosecu-
tion" the import of "a causeless as well as an ill-intended pros-
ecution." He says further on (p. 10, § 8), that "the want of
probable cause is the essential ground of the action"; and this
court in the case of *Marable* v. *Mayer,* 78 *Ga.* 710, held it to
be essential that an allegation of a want of probable cause
must be distinctly made in the declaration. Indeed, want of
probable cause lies at the foundation of the action. Malice
sufficient to sustain a recovery may be inferred from want of
probable cause, but the want of such cause may never be in-
ferred from malice. *Ventress* v. *Rosser,* 73 *Ga.* 535; *Marable*
v. *Mayer,* 78 *Ga.* 710. This court in the case of *Coleman* v.
*Allen,* 79 *Ga.* 643, distinctly repudiated the doctrine, ruled in
an English case (10 Exch. 352), that "any motive other than
that of simply instituting a prosecution for the purpose of
bringing a person to justice, is a malicious motive on the part
of a person who acts in that way." It has been ruled in many
States that the motive is immaterial, if there was probable
cause (48 Barb. 30; 111 Penn. St. 111; 46 Md. 580; 69 Ill.
376; 49 Mich. 286); or if the accused is guilty of the offense
charged (3 Blackf. 241; 2 Denio, 617); and such we under-
stand to be the meaning of our statute. If there is a total
want of probable cause upon which to base a charge that the
accused is guilty of the crime in question, then it would be a
causeless prosecution, and the person instituting it can not be
protected by averring the want of malice on his part. It will
be inferred that it was an evil motive that prompted one, in
the absence of any probability of the guilt of the accused, to
inaugurate a criminal prosecution against another, and such
motive answers the malice required by the statute. The prob-

able cause referred to has been defined to be, "the existence of such facts and circumstances as would excite the belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted." 24 Howard (U. S.), 544; 22 Fed. Rep. 217; 85 Am. Dec. 373. And it is on the existence of such belief, based upon such facts and circumstances, that the question of probable cause rests—not on the fact that the accused is actually guilty. 53 N. Y. 14, and other cases cited in 14 Am. & Eng. Ency. Law, 26, note 2. Reasonable and probable cause mean the same. 97 U. S. 642. So that in cases of this character, where there is an absence of facts and circumstances which would lead a reasonable mind to the conclusion of guilt, malice may be inferred on the part of one who prosecutes him. On the other hand, the existence of probable cause does not depend on the fact that the accused was actually guilty.

2. If the circumstances show that there was no reasonable ground for the prosecution, then it would follow that so far as the circumstances were concerned the want of probable cause existed. But notwithstanding this fact, if the prosecutor really acted in good faith and believed, although mistakenly, that the accused was really guilty, he is at liberty to go further and show his good faith by facts and circumstances, because the prosecution must be maliciously carried on and without probable cause, and want of probable cause exists when the circumstances are such as to satisfy a reasonable man that the prosecutor had no ground for proceeding but his desire to injure the accused. Civil Code, § 3844. It is perfectly consistent that one who really had no desire to injure should believe honestly that certain facts known to him established the guilt of another; if he did so in good faith and had reasons for such faith, there might exist probable cause, although in fact the circumstances did not fix guilt on the accused. In all such cases, however, the jury shall determine the existence or want of probable cause. One of the circumstances which may be submitted to show this cause is, that the prosecutor conferred with and acted on the advice of counsel in instituting the prosecution. The

general rule as stated by Mr. Newell (see his work on Malicious Prosecution, p. 310), is, where a party has communicated to his counsel all the facts bearing on the case, of which he has knowledge or could ascertain by reasonable diligence and inquiry, and has acted upon the advice received honestly and in good faith, the absence of malice is established, the want of probable cause is negatived, and the action for malicious prosecution will not lie; and this rule is supported by decisions from the States of Ohio, Missouri, New Hampshire, Pennsylvania, Illinois, Massachusetts, Mississippi, Alabama, California, Virginia, Maryland, Louisiana, Rhode Island, and North Carolina. It seems to me to be founded upon reason and logic. It must be remembered that the law does not favor actions to recover damages for malicious prosecutions. It was at one time doubted whether the action would lie, unless in a case of conspiracy. Lord Holt said that such actions ought not to be favored, but managed with great caution. Their tendency is to discourage prosecutions for crime, as they expose prosecutors to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions, when, if they fail, they may be subjected to the expense of litigation, if they be not mulcted in damages. Newell on Mal. Pros. p. 21, §§ 13 and 14. While the courts should not discourage actions for malicious prosecutions by establishing harsh rules of evidence, or by the rigid principles of law, by force of which a party may be deprived of an important remedy for a real injury, at the same time all proper guard and protection should be thrown around those who, in obedience to the mandates of duty, may be compelled to originate and carry on a criminal prosecution which may from any cause terminate in favor of the accused. Ibid. p. 22, § 15 ; see also 20 Ill. 354. But however this may be elsewhere, it is settled by our statute (Civil Code, § 4420), under the provisions of which the charge of the court below in reference to advice of counsel was proper. This rule is applicable in suits to recover damages for malicious prosecutions; and while the client is not relieved when acting under the advice of counsel, yet the fact of such advice, bona fide given and acted on, may go in mitigation of damages.

*Fox* v. *Davis & Co.*, 55 *Ga.* 298, 302.   And on the question of malice and probable cause, it is competent to show that the prosecution was undertaken on the advice of counsel.   *Ventress* v. *Rosser*, 73 *Ga.* 535; *Rigden* v. *Jordan & Stewart*, 81 *Ga.* 675; *Fox* v. *Davis & Co.* 55 *Ga.* 298.

The fourth ground of the motion for a new trial in this case alleges error, because the court refused to charge the jury, in substance, that if the defendant made to the solicitor-general a truthful statement of the evidence in the case, giving the names of witnesses who furnished him the evidence, and the solicitor-general made a mistake either in classifying the offense or in advising that any offense had been committed, the defendant is not responsible for the mistake of the solicitor-general, and if he acted in good faith and without malice and upon the advice of the solicitor-general, the law relieves him from all liability.   The substance of this request as a legal proposition is, we think, good law.   It will be noted that the provisions of our Civil Code, § 4420, supra, to the effect that clients shall not be relieved from liability on the advice of counsel, refers to private counsel and counsel employed by the prosecutor himself for the purpose of giving advice.   The opening words of the section clearly indicate this meaning: *clients* shall not be relieved, etc.   A solicitor-general or prosecuting officer for a particular circuit has only the State for a client.   He can not be employed by a private person to prosecute a case, nor to give advice.   His is a public duty.   He represents the entire public.   He is an officer commissioned by the State to perform certain duties.   These are in part prescribed by the statute.   Civil Code, § 4392.   Among his duties, as therein enumerated, he is to draw up all indictments and prosecute all indictable offenses; and by the 11th paragraph of the section, he is to perform such other duties as may necessarily appertain to his office.   As a prosecuting officer, the office of solicitor-general is a very responsible and important one. He is attorney and agent of the government in whatever concerns his office.   He is to determine whether or not to commence a particular prosecution, or to discontinue one already begun.   If it be not for the public interest to punish the doer

where the law is but technically violated, he shall forbear the prosecution. The prosecutions which he inaugurates are by the people in the name of the State. He is controlled by the public interests, and while these interests require the conviction of the guilty, they forbid that of the innocent. See 1 Bishop's New Criminal Procedure, §§ 287 to 293. The advice then given by the prosecuting officer, in relation to a prosecution in the court of which he is solicitor-general, is not to be placed on the same footing as advice from private counsel. The solicitor-general draws the bill of indictment, examines the witnesses, not with a view to the interest of any client, but alone to subserve public justice. If in his judgment the facts stated do not amount to a violation of the criminal law, he will submit no indictment. The whole proceeding, from the time the case is laid before him, where an indictment is demanded, until the rendition of the verdict, is under his direction, supervision and control, subject of course to certain restrictions which the law imposes. Can it be said that when a prosecutor lays before the solicitor-general a given state of facts which he is prepared to prove, and asks direction whether or not these facts constitute a violation of law, and when advised by this officer, whose official duty it is to advise, that they do constitute a breach of the criminal law, and he acts on this construction of the law by this officer, a prosecution instituted thereunder is not supported by probable cause for his action? The very fact that the State's officer advises that there has been an infraction of the law, is probable cause which any citizen may act upon. Our Civil Code, § 3844, says, that want of probable cause shall be a question for the jury under the direction of the court. The doctrine generally adopted in the American courts is, that the question of probable cause is a mixed question of law and fact. "Whether the circumstances alleged to show it probable are true and existed is a matter of fact, and to be determined by the jury; but whether, supposing this to be true, they amount to probable cause, is a question of law." Newell on Mal. Pros. p. 276, § 11, citing numerous authorities. We do not understand our code, as above referred to, to differ from this doctrine. The question of prob-

able cause is a question for the jury, under the direction of the court; that is, a question of fact for the jury, but subject to the provisions of the law thereon. We know of no case where it has been held that the advice given by attorneys for the commonwealth in cases which came under their supervision was not probable cause for the prosecution, where such advice was to the effect that the circumstances, truly stated, constituted a violation of law. On the contrary, in such of the States where the question has been decided and which has come to our knowledge, the courts have uniformly held the advice of prosecuting officers to be probable cause to authorize the prosecution. The Texas Court of Appeals, 30 N. W. Rep. 566, uses the following language on this subject: "Where a person in good faith makes to the prosecuting attorney a fair statement of the facts as known to him concerning a charge of which he makes complaint, the action of the attorney in advising the prosecution is conclusive proof of probable cause, in an action for malicious prosecution against the person making the complaint." See also 45 N. W. Rep. 970. In 16 Pac. Rep. 804, the Supreme Court of Kansas says: "It is a good defense to any action for a malicious prosecution, that before commencing the alleged malicious prosecution the defendant presented the matter to the county attorney, fairly stating to him all the facts, and then in good faith followed the advice of the county attorney. Such a thing completely rebuts the allegations of the plaintiff that there was a want of probable cause, and it of itself shows probable cause." To the same effect is the ruling of the Supreme Court of Iowa, 29 N. W. Rep. 743. The Supreme Court of Michigan has ruled the same principle. 13 N. W. Rep. 593. See also Newell on Malicious Prosecution, 311. It of course must be understood, in all cases where the advice of the State's attorney is sought by a person contemplating the prosecution of another, that to protect him from liability in an action for malicious prosecution he must make a fair, full and complete statement of the facts as they exist. He is not relieved if he conceals facts, nor if he distorts facts, nor if he is negligent in ascertaining facts. It is necessary also that he act bona fide on the advice as given. Unless he does

so, there is no reason in the law which affords him protection under such circumstances; but when he has honestly sought such advice, and in good faith acted on it, it can not be said that the prosecution was undertaken without probable cause.

The court below erred in refusing to grant a new trial; and accordingly the

*Judgment is reversed.    All the Justices concurring.*