9516.   CASPER *v.* THE STATE.

1. Under the undisputed facts the solicitor-general was not disqualified, by reason of interest, to represent the State in obtaining the indictment, and the court did not err in directing a verdict against the plea in abatement.
2. The offense charged was receiving stolen goods. The evidence against the defendant being circumstantial and not being sufficient to authorize a finding that he knew that the goods were stolen, the court erred in overruling the motion for a new trial.
DECIDED APRIL 2, 1918.

Indictment for receiving stolen goods; from Ben Hill superior court—Judge Crum. December 28, 1917.

*McDonald & Bennett, Eldridge Cutts,* for plaintiff in error.

*J. B. Wall, solicitor-general, Jesse Grantham, O. H. Elkins,* contra.

HARWELL, J. The indictment charged the accused with receiving certain stolen brasses, the property of the Atlanta, Birmingham & Atlantic Railway Company, knowing that they had been stolen. He filed a plea in abatement to quash the indictment upon the ground that the solicitor-general was interested, and therefore disqualified to represent the State in obtaining the indictment. The plea set up that the Atlanta, Birmingham & Atlantic Railway Company was the real prosecutor and had claimed the entire amount of the brass, and that the solicitor-general was local attorney for the railway company, and was representing the railway company in the assertion of its claim, adversely to the claim of the defendant. The plea further alleged that the solicitor-general was interested as paid attorney in the representation of the claim of the railway company to the brass, and was interested by reason of his regular employment by said railway company. Upon the issue thus made a jury was sworn and evidence introduced. The evi-

dence shows substantially that the solicitor-general was local counsel for the railway company, employed to represent the company in civil matters only, and that he did not represent it in any criminal prosecutions; that at the time this indictment was obtained the railway company was asserting no claim to the brass that the solicitor-general knew of; that the civil litigation between the defendant and the railway company started some time after the indictment was obtained; that the solicitor-general advised the agent of the railway company, after this prosecution arose, to hold the shipment of brass, and to have it returned, to be held as evidence in the instant case; that he did not do this as local counsel for the railway company, but as representing the State in the prosecution. The defendant tendered in evidence the pleadings in the civil suit of the defendant against the railway company, filed in March, 1917, for the recovery of three barrels of junk brass, in which the railway company's answer was signed by Bolling Whitfield and Wall & Grantham, attorneys for the railway company; Mr. Wall, the solicitor-general, being a member of the firm of Wall & Grantham. The State objected to the introduction of these papers, upon the ground that they were immaterial and irrelevant, the suit being filed after the finding of the indictment, the date of which was in October, 1916. The court sustained this objection and excluded this evidence, and the defendant excepts to this ruling. After the introduction of evidence on the plea in abatement, the court directed a verdict against it; and to this ruling the defendant excepts.

1. The defendant insists that under the facts, as substantially stated above, the solicitor-general was disqualified, under the provisions of section 4929 of the Civil Code of 1910, and section 805 of the Penal Code. He insists that the case of *Nichols* v. *State*, 17 *Ga. App.* 593 (87 S. E. 817), is controlling. It will be seen however, on examination of that case, that it is easily differentiated from the instant case. In that case the solicitor-general was counsel for the plaintiff in a suit for damages against the railroad company, and his fee was contingent,—that is, dependent upon his client's recovery of damages from the defendant. The criminal prosecution arose and the indictment was obtained after the pendency of the civil suit, in fact after the civil suit had been tried, and grew out of the trial of the civil case. Clearly, therefore,

under the facts of that case the solicitor-general was disqualified by reason of interest. The cases of *Baker* v. *State,* 97 *Ga.* 452 (25 S. E. 341), and *Hicks* v. *Brantley,* 102 *Ga.* 271 (29 S. E. 459), are easily distinguished from the instant case, as will be seen on examination of those cases. Counsel cite no authority for the proposition that the solicitor-general is disqualified and that the indictment obtained against the defendant should be quashed because of employment of the solicitor-general in a civil suit or proceeding arising *after* the institution of the criminal prosecution. We do not think that under the facts as they appear in the instant case the solicitor-general was disqualified. At the time the indictment was obtained no litigation had arisen between the defendant and the railway company over the brass alleged to have been stolen. At that time the solicitor-general had no knowledge that the railway company would set up any claim to the brass. Neither does it appear that he had been consulted by the railway company with a view to representing that company in any civil proceeding. It is true that he had advised with the agents of the railway company as witnesses in the criminal prosecution at the time the indictment was obtained, just as he is accustomed to advise with witnesses who go before the grand jury. The interest which disqualifies a solicitor-general from acting is the interest which he has, personal or otherwise, at the time that the indictment is obtained. It is very clear, therefore, that under the facts as they appear in the record, there was no merit in the motion to quash the indictment upon the ground of the disqualification of the solicitor-general. For the reasons heretofore stated the court did not err in excluding the evidence of the civil proceeding between the defendant and the railway company, which suit was filed several months after the indictment in the instant case was obtained.

Neither did the trial judge err in directing a verdict against the defendant on the issue made by this plea. It was insisted that the issue should have been submitted to the jury; but, conceding everything that was shown on behalf of defendant, there was no issue of fact for a jury. The facts, considered most strongly in behalf of the defendant, showed no legal disqualification of the solicitor-general and no reason for quashing the indictment. In the case of *Spencer* v. *State,* 125 *Ga.* 255 (54 S. E. 144), Mr. Justice Beck, speak-

ing for the court, said that where one indicted for crime files a plea in abatement, he must affirmatively establish the ground of his plea, otherwise it is not error for the court to direct a verdict against him.

2. The indictment alleged that the stolen brasses belonged to the Atlanta, Birmingham & Atlantic Railway Company, and described them as being part of certain engines and car-bearings branded A. B. & A., and locomotive brasses consisting of parts of lubricators, injectors, checks, rod brasses, etc. It was further alleged that these brasses were stolen by parties to the grand jurors unknown, and that Casper knew at the time he received the goods that they were stolen. There was evidence that the defendant had shipppd some twelve or fifteen barrels of junk brass to Birmingham over the Atlanta, Birmingham & Atlantic Railway; that one of these barrels was broken when the shipment arrived at Manchester, and that the agents for the railway company recognized some of it as brass belonging to the company, and picked out three barrels of this shipment, sent it back to Fitzgerald, and held it until the trial of this case. The agents of the company, in their testimony in behalf of the State, identified several pieces of this brass as belonging to the company's engine No. 100, and stated that these pieces were missing at the time that this engine was repaired. The defendant introduced a number of witnesses and offered evidence for the purpose of showing that shipments of brass were made to him from various sections where parties bought brass for him of the character of that in the three barrels which were held up by the railway company. He further offered evidence to show that at the time that certain locomotives belonging to the railway company were sold as junk and torn up and shipped off, he bought several hundred pounds of brass from one Johnson, who had in hand the matter of tearing up these engines and shipping them off as junk for the firm purchasing the engines. Johnson testified, in behalf of the State, that he did not sell the defendant several hundred pounds of brass, but sold him thirty-five pounds. The State introduced also some letters written by the defendant to Johnson, requesting Johnson to appear as a witness in his behalf, and calling attention to the purchase, as defendant claimed, of several hundred pounds of brass by him from Johnson.

9

The evidence in the case is voluminous, and we have carefully gone through the record to determine whether or not there is any evidence to show, or to authorize the jury in finding, that the defendant received this brass with *knowledge of the fact that it was stolen*. While we are not inclined, and in fact are not authorized, to disturb the verdict if there is any evidence to support it, we fail to find in this record any evidence in support of the proposition that the defendant *knew at the time* that he received this brass that it was stolen. As a matter of fact, while the defendant, as the record clearly indicates, apparently purchased considerable quantities of junk brass, very little of this shipment which was made by him, and apparently very little of the three barrels which were returned to Fitzgerald, was identified as belonging to the railway company and as being stolen. The evidence relied on to show knowledge on the part of the defendant that any of this brass was stolen was entirely circumstantial. That being true, in order for the conviction to be sustained, the evidence must be sufficient to exclude every other reasonable hypothesis than that of his guilt. We do not think that it measures up to this requirement. While there is a discrepancy between the defendant's testimony and that of the State as to the amount of brass purchased by him from one Johnson, who was in charge of breaking up and shipping away some old engines which had been purchased from the railway company, we do not think that this discrepancy is sufficient to authorize his conviction. As a matter of fact the weight of testimony on this issue as to the amount of brass purchased from Johnson is decidedly in the defendant's favor. Neither do we think that the circumstance of the amount of brass purchased, handled, and shipped by the defendant is sufficient to authorize the conclusion that he had knowledge that the brass was stolen, especially in view of the facts that the State identified only a small quantity of this large shipment as being missing or stolen from the railway company; and that the evidence clearly shows that the defendant handled large quantities of brass, shipped to him from various sections of the State. We think, therefore, that the evidence was insufficient to authorize the conclusion that the defendant had knowledge, at the time that he received it that this brass was stolen. Compare *Brooks* v. *State*, 21 *Ga. App.* 661 (94 S. E. 810), and cases cited. The trial judge erred therefore in overruling the motion for a new

trial upon the general grounds. This question being controlling in the case, the other special grounds of the motion need not be considered, and they are not passed upon.

*Judgment reversed. Broyles, P. J., and Bloodworth, J., concur.*