25210.   SCOTT *v.* THE STATE.

DECIDED JANUARY 14, 1936.  REHEARING DENIED MARCH 14, 21, 1936.

*J. K. Jordan,* for plaintiff in error.

*John A. Boykin, solicitor-general, E. A. Stephens, J. W. LeCraw,* contra.

GUERRY, J.  Thomas E. Scott was indicted on five counts. Each count charged him with the commission of a distinct misdemeanor. All were of the same species.  The first count charged him with an attempt, in conspiracy with Irma Sutton and Sam Worthy, to cheat and defraud the Georgia Power Company by falsely representing to said company that Irma Sutton was physically injured while alighting from one of its street-cars.  The second count charged him with conspiring with Grady Meaders and Sam Worthy to cheat and defraud Johnson-Fluker Company by the defendant's false representation to said company, made in a suit filed in the city court of Atlanta, that Grady Meaders was struck by a truck operated by said company, whereby $150 was fraudulently obtained from said company because of such misrepresentations. The third count charged him with conspiring with T. E. Rainey and Sam Worthy, whereby $300 was obtained by defendant's false representation to the Georgia Power Company that T. E. Rainey while a passenger on one of its street-cars was injured in alighting therefrom.  The fourth count charged him with conspiring with Norman DeKrasner, whereby $150 was obtained from the Georgia Power Company by the defendant's false representation to that company that John Jaggers, while a passenger on a street-car of that company, was injured in alighting therefrom.  The fifth count charged him with conspiring with Edna Wilhoite, A. W. Wilhoite, and Sam Worthy, whereby $600 was obtained from S. H. Kress & Company by the defendant's false representation that Edna Wilhoite was injured while a customer in its store, by tripping over an electric cord which was stretched slightly above the floor.  The jury returned a verdict of guilty on the fourth count, and not guilty on the first, second, third and fifth counts.

Before pleading to the indictment, the defendant filed a demurrer as follows: "1. Because said indictment and every count thereof charges no offense against the laws of Georgia. 2. Because said indictment is drawn under § 719 of the Criminal Code of Georgia, denouncing fraud by deceitful means or artful practices other than those mentioned in said Code, whereas said Code by § 330 expressly mentions and penalizes the offense of barratry; and because said indictment is insufficient to charge barratry, because the necessary ingredient of frequently stirring suits and quarrels is not averred. 3. He demurs to counts 2, 3, 4, and 5 of said indictment, because ownership of the moneys therein alleged is not set forth; and because in the absence of such averments it does not appear that the several corporations therein named were in fact defrauded." This demurrer was overruled, and Scott excepted.

In purging the jury, and before putting them upon the defendant, as to whether there were in the panel any stockholders in the corporations alleged to have been defrauded, including the Georgia Power Company, one juror replied that he was not a stockholder in the Georgia Power Company, but he did own stock in the Commonwealth & Southern Corporation, which owned all of the stock of the Georgia Power Company. The solicitor-general thereupon stated to the court that this did not disqualify the juror, that he himself held stock in the Commonwealth & Southern Corporation. Upon this statement counsel for the defendant moved to quash the indictment on the ground that the solicitor-general was disqualified from instituting and advising with the grand jury in returning it. The solicitor-general later qualified his statement that he owned stock in the Commonwealth & Southern Corporation, by saying that he bought stock in the Commonwealth & Southern Corporation and gave it to his three children, and that he merely held it for them. This motion was likewise overruled, and Scott excepted. The judge refused to approve the defendant's brief of evidence, and dismissed his motion for new trial, and to this action, exception is taken.

■ The defendant's demurrer that the indictment does not state a crime under the laws of this State (which is substantially the same point raised in the further contention that the facts recited in the indictment are not covered by the terms of the Penal Code of 1910, § 719    (Code of 1933, § 26-7410), making penal any

deceitful means or artful practice "other than those which are mentioned in this Code," by which any person is defrauded or cheated, but because the quoted portion of that section is covered by the Penal Code of 1910, § 330 (Code of 1933, § 26-4701), punishing the offense of barratry, and that since the indictment does not allege "frequently exciting and stirring suits and quarrels" it should be quashed) is to us clearly without merit. Section 719 (§ 26-7410) is as follows: "Any person using any deceitful means or artful practice, other than those which are mentioned . . , by which an individual, or a firm, or a corporation, or the public is defrauded and cheated, shall be punished as for a misdemeanor." Penal Code (1910) Section 330 (§ 26-4701) declares: "Common barratry is the offense of frequently exciting and stirring suits and quarrels between individuals, either at law or otherwise. Any person who shall be found and adjudged a common barrator, vexing others with unjust and vexatious suits, shall be guilty of a misdemeanor; and any attorney who shall violate the provision of this section shall also be disqualified from practicing his profession." Our legislature has at various times provided against deceitful means or artful practices. It is declared by the Penal Code of (1910), § 703 (1933, § 26-7401) that any person who shall by false representation as to his wealth, respectability, etc., obtain a credit and thereby defraud another of any money or other valuable thing, or shall cause or procure any other person to report falsely of his honesty, respectability, wealth, etc., and thereby obtain credit and shall thereby get into possession of goods or other valuable thing, shall be deemed a cheat and swindler. By act of 1910 (Park's Penal Code of 1914, §§ 718(a), 718(b) (Code of 1933, §§ 52-9903, 52-9904) the defrauding of hotels and boarding-houses was made punishable. By the Penal Code of 1910, § 704 (1933, § 26-7402), a person cheating at any game, or in or by bearing a share or part in the stakes, or in or by betting on the sides or hands of such as do or shall play, whereby he obtains or acquires to him, or to any other, any money or other valuable thing, shall be deemed a cheat. The Penal Code of 1910, § 705 (1933, § 26-7403), declares bakers and others selling under assize to be cheats. The Penal Code of 1910, § 706 (1933, § 112-9901) declares that any person who shall buy or sell knowingly by false weights or measures shall be deemed a common cheat. Various

other acts, such as forestalling, regrating, and engrossing (1910, § 707—1933, § 26-7404), counterfeiting brands or marks (1910, § 708.—1933, § 106-9907), putting dirt and rubbish in cotton, rice, etc. (1910 § 709—1933, § 26-7405), falsely personating another (1910, § 710—1933, § 26-7406), and others are treated under the same head of deceitful means and artful practices. As a blanket provision § 719 (§ 26-7410), supra, was enacted, and it covers all other transactions of like kind. Barratry is merely exciting and stirring up suits and quarrels between individuals. It is not required in barratry that there be any false representations with an intent to defraud, or the obtaining of money or other valuable thing, or that the frequent suits stirred up be fraudulent. The exciting or stirring up of suits may be on grounds that are absolutely just and well founded; and yet the Penal Code properly states that if any person makes a practice of stirring up suits or exciting quarrels between individuals, he becomes guilty of a misdemeanor. Therefore it can hardly be said that § 719 (§ 26-7410), supra, does not cover the acts alleged, simply because parts of the acts, if taken all together, may constitute barratry. This section covers any cheating and defrauding of another out of money or other valuable thing not otherwise mentioned in the Code. Cheating and swindling statutes are aimed at evils entirely different from those covered by the statute punishing and defining barratry. Barratry is not an act of like character; and while several distinct acts, as those set out in the indictment against the defendant, or at least a part of those acts (leaving out of consideration the fraudulent representation, the intent to defraud, and the obtaining of money or other valuable thing), may, when taken together, constitute barratry, this affords no reason why the acts as alleged are not covered by § 719 (§ 26-7410), or why they should be charged only under § 330 (§ 26-4701).

■ As to the other ground of demurrer: While it is true that in an indictment for cheating and swindling by obtaining money through false and fraudulent statements and representations the ownership of the money thus obtained and the name of the person cheated and defrauded should be stated (*O'Neal* v. *State*, 10 *Ga. App.* 474, 73 S. E. 696; *Oliver* v. *State*, 15 *Ga. App.* 452 (2), 83 S. E. 641; *Rogers* v. *State*, 29 *Ga. App.* 363, 115 S. E. 668; *Fischer* v. *State*, 46 *Ga. App.* 207, 167 S. E. 200), and that the

terms of the indictment should be strictly construed and most strongly against the State (*Gilbert* v. *State,* 175 *Ga.* 276, 165 S. E. 120), yet there has been no ruling in this State that the indictment must contain in *express terms* an allegation of ownership; and where by statute it is provided that "every indictment or accusation of the grand jury shall be deemed sufficiently technical and correct which states the offense in the terms and language of this Code, or so plainly that the nature of the offense charged may easily be understood by the jury" (Code of 1933, § 27-701), which means that an indictment conforming substantially to the requirements of a statute will be sufficient where it gives the accused sufficient knowledge of the offense charged to enable him to prepare for trial (*Amorous* v. *State,* 1 *Ga. App.* 313, 57 S. E. 999), if from the allegations of the indictment as a whole it sufficiently appears to whom the property belonged, the indictment is not defective, and the lack of an express allegation of ownership is not a good reason for quashing the indictment. The fourth count, on which the defendant was convicted, alleged that Thomas E. Scott "did wrongfully, fraudulently, and falsely conspire . . to cheat, wrong, and defraud Georgia Power Company out of a sum of money, and accused, . . did cheat, wrong, and defraud said Georgia Power Company out of $150 in money," etc. The indictment then sets out that the false representations were made to the general claim agent and employee of the Georgia Power Company, and the representations were such as to establish a legal liability on the Georgia Power Company for damages. It then further alleges that "said Georgia Power Company did rely upon said statements as true, and said company was thereby induced to part with $150 in money, . . and said company was thereby defrauded out of the sum of $150." To our minds there can be no room for legitimate doubt that from the allegations of the indictment as a whole it clearly appears that the ownership of the $150 was laid in the Georgia Power Company.

■ On the motion to quash the indictment and disqualify the solicitor-general this question is presented: Is a solicitor, who is the father of a stockholder in a corporation which owns the entire stock of another corporation, disqualified to institute an investigation before the grand jury and to advise with them in reference to returning a true bill against one accused of defrauding the last-

mentioned corporation? It becomes pertinent to inquire into the functions of a judge, a juror, and a prosecuting officer, so that it may be determined what constitutes such an interest as will disqualify any of them. The Code of 1933, § 24-102, declares: "No judge or justice of any court, no ordinary, justice of the peace, nor presiding officer of any inferior judicature or commission, shall sit in any cause or proceeding in which he is pecuniarily interested, or related to either party within the fourth degree of consanguinity or affinity, nor in which he has been of counsel, nor in which he has presided in any inferior judicature, when his ruling or decision is the subject of review, without the consent of all the parties in interest." These statutory grounds are exhaustive of the disqualification of a presiding judicial officer. *Elliott* v. *Hipp,* 134 *Ga.* 844 (68 S. E. 736, 137 Am. St. R. 272, 20 Ann. Cas. 423). "The degree of relationship to a party which will disqualify a juror is not the same as will disqualify a judge. At common law favor was not presumed in a judge, while originally the presumption as to a juror was that any relationship whatever, either by affinity or consanguinity, would disqualify a juror, this rule being later modified so that the disqualification by reason of kinship extended no further than to include the ninth degree." *Smith* v. *State,* 2 *Ga. App.* 574 (59 S. E. 311). The Code of 1933, § 24-2913, provides: "When a solicitor-general is absent or indisposed, or disqualified from interest or relationship to engage in a prosecution, the presiding judge shall appoint a competent attorney of the circuit to act in his place." Thus, while our Code recognizes a disqualification of a solicitor because of interest or relationship, it does not define what interest or what relationship will disqualify him. In 22 R. C. L. 102, it is stated: "While the prosecuting officer should see that no unfair advantage is taken of the accused, yet he is not a judicial officer. Those who are required to exercise judicial functions in the case are the judge and jury. The public prosecutor is necessarily a partisan in the case. If he were compelled to proceed with the same circumspection as the judge and jury, there would be an end to the conviction of criminals." If the prosecuting attorney has a personal interest, it may disqualify him. If he himself is involved in the offense under investigation, he should not be allowed to advise the grand jury and secure a bill. As was said in *Nichols* v. *State,* 17 *Ga. App.* 593 (87 S. E. 817),

"Where a solicitor-general in his private capacity as attorney at law is counsel for the plaintiff in a suit for damages against a railroad company, and his fee is contingent or conditional, that is, dependent upon his client's recovery of damages from the defendant, he is disqualified by interest from advising with the grand jury as to the finding of a true bill for perjury against a witness for the alleged false testimony given by the witness in favor of the railroad company in that damage suit, where that cause at the time of the finding of the indictment is still pending in the courts." In *Hicks* v. *Brantley,* 102 *Ga.* 264, 271 (29 S. E. 459), it was said of a solicitor-general: "He can not be employed by a private person to prosecute a case, nor to give advice. His is a public duty. . . The solicitor-general draws the bill of indictment, examines the witnesses, not with a view to the interest of any client, but alone to subserve public justice." In *Baker* v. *State,* 97 *Ga.* 452 (25 S. E. 341), it was decided that a solicitor-general was disqualified to prosecute a case of criminal libel in which he himself was the person alleged to be libeled and was the prosecutor as well as the solicitor. From the authorities it seems that the phrase "disqualified from interest," used in the Code of 1933, § 24-2913, means a "personal interest," and that a solicitor is not disqualified by personal interest in a case where he "was not acting in his personal or individual character, or for his personal or individual interest, but in his character as an officer of the law specially charged by statute to perform this particular duty." *Pinkney* v. *State,* 22 *Ga. App.* 105 (95 S. E. 539). See also *Casper* v. *State,* 22 *Ga. App.* 126 (95 S. E. 534); *Buffington* v. *State,* 33 *Ga. App.* 162 (125 S. E. 723); *Stapleton* v. *State,* 19 *Ga. App.* 36 (90 S. E. 1029). The same degree of judicial nicety does not apply as to the qualification of a judge or juror. In even a greater degree we may say that the same distinction does not apply as to the disqualification of a juror and that of a solicitor. It is our opinion that the relationship of a solicitor-general to stockholders in a corporation, which corporation itself owns the stock in another corporation which is alleged to have been cheated and defrauded, is not such a relationship as would disqualify the solicitor, for personal or pecuniary interest, to appear before the grand jury in obtaining such indictment or in prosecuting the case before a jury, it not appearing that in doing so he was actuated by personal interest in the matter.

■ The defendant further complains that the court erred in dismissing his motion for new trial on the ground that no proper brief of evidence was tendered. The trial began on February 14, 1935, and a verdict was rendered on February 22, 1935. A motion for new trial was filed, and on the following day a hearing thereon was set for April 23, 1935, "or when reached for hearing," and the defendant was given until the final hearing to prepare and present a brief of evidence. On August 20, 1935, the judge refused to approve the brief submitted by defendant, on the ground that it was not full and correct; and the·judge himself being unable, for lack of memory, to point out all the deficiencies in the proposed brief, thereupon dismissed the motion for new trial for lack of an approved brief of evidence. The defendant was tried on five counts, and evidence was introduced with respect to all of these counts. The defendant did not offer to present a brief of evidence which contained all the evidence introduced at the trial, nor in fact did the brief offered present the testimony introduced at the trial of the defendant, but it was a stenographic copy of the evidence of some of the witnesses introduced at the trial of his codefendant, DeKrasner. The defendant and his counsel furnished affidavits to the effect that this testimony was in effect substantially the same as that introduced at the trial of the defendant, and that the paper tendered was a brief of all the material evidence introduced at the trial. The solicitor-general objected to approval of the brief, on the ground that it was not correct, in that it omitted the evidence of all the witnesses in support of the four counts on which defendant had been found not guilty, and because it omitted the testimony of all witnesses in reference to transactions similar to those charged, and because it did not contain the testimony actually offered against the defendant, all of which should be considered by the court in passing upon the motion for new trial. Evidence was introduced, pointing out the omissions, and also that the evidence in the DeKrasner case was not the same as that in the present case. The judge refused to approve the brief, on the ground that it was not correct. He further stated that because of the lapse of time he was unable to point out in what particulars it was incorrect. Under the ruling in *Griffin* v. *State*, 50 *Ga. App.* 214 (177 S. E. 514), and cit., we can not hold that the judge abused his discretion in refusing to approve the brief.

What is now before this court is not covered by the ruling in *Camp* v. *Curry-Arrington Co.*, 46 *Ga. App.* 17 (166 S. E. 428). In that case the judge refused to approve the brief, not because he thought it incorrect, but because counsel for the defendant objected to it and he could not remember the evidence so as to be able to adjudge the merits of the objection. In the present case it was admitted that the brief tendered was not a complete brief of all the evidence adduced at the trial of the defendant, and after a hearing as to its incorrectness no offer was made to make it full. The court in the instant case did make an effort to ascertain whether or not the brief was correct, and did not arbitrarily refuse to approve the brief merely because the solicitor-general refused to agree that the brief was correct. The court actually had a hearing, and certified that the brief was incorrect, and that on account of the lapse of time he was unable to remember the testimony and could not point out its exact incorrectness, and for that reason could not approve it. The movant contended that the evidence which admittedly had been omitted was not material. The judge thought to the contrary. We are unwilling to hold that he abused his discretion in refusing to approve the brief of evidence. We find no reason why we should reverse the judgment.

*Judgment affirmed.* *MacIntyre and Sutton JJ., concur.*

ON MOTION FOR REHEARING.

Counsel for the plaintiff in error strenuously insists, inasmuch as this court is bound to follow the decisions of the Supreme Court, that what is ruled in the second headnote, supra, is contrary to the decisions of *Locke* v. *State*, 3 *Ga.* 534, 540, *McLane* v. *State*, 4 *Ga.* 335, and *Johnson* v. *State*, 90 *Ga.* 441 (16 S. E. 92), and should therefore be withdrawn. We recognize the principle laid down in these cases, that " 'The charge . . must be sufficiently explicit to support itself; for no latitude of intention can be allowed to include anything more than is expressed.' 1 Chitty, Crim. Law, 172 . . , and no argumentative inferences will supply the want of direct averments of material facts." In the *Locke* case, it was held that in an indictment for bastardy it must be alleged that the accused is the actual father of the child. In the *McLane* case it was held that where the indictment showed on its face that it was barred by the statute of limitation, and an exception was relied on to prevent its bar, "such exception should be alleged

in the indictment." In the *Johnson* case, where the accused was charged with assault with intent to murder "with force and arms and arsenic poison," it was held that the defendant was entitled to know "in what manner the accused used the poison in the commission of the alleged offense." We subscribe to and follow the rule that in cases like the one at bar, and in larceny cases, the ownership of the property should be alleged and may not be inferred. What is said in our opinion is not in conflict with this principle. An allegation that A did cheat, wrong, and defraud B out of $150 in money is a sufficient allegation in such respect to meet every requirement in a cheating and swindling indictment. The allegation that B was defrauded out of $150 in money presupposes that B had that much money, without alleging it; and the failure to make such an allegation can not be harmful to the accused.