## Johnson *v.* The State.

1. Although the statute (Code, §4628) declares that every indictment shall be deemed sufficiently technical and correct which states the offence in the terms and language of the code, or so plainly that the nature of the offence charged may be easily understood by the jury, an indictment charging that the accused with force and arms and arsenic poison, and other poisons to the grand jurors

unknown, but all being weapons likely to produce death, did un-
lawfully and with malice aforethought make an assault upon a
named person with intent then and there to kill and murder
him, is wanting in due certainty; and a special demurrer thereto,
alleging, in effect, that the indictment did not state how or in
what manner the accused used the poison in the commission of
the alleged offence, and that the facts were not set out in the in-
dictment with sufficient particularity to enable the accused to
make a defence, should have been sustained.

2. As the indictment should have been quashed on demurrer, all
proceedings had thereon after overruling the demurrer were
necessarily erroneous.

October 8, 1892.

Criminal law. Indictment. Assault to murder.
Poison. Before Judge RICHARD H. CLARK. Fulton
superior court. March term, 1892.

J. C. JENKINS, for plaintiff in error.

C. D. HILL, solicitor-general, by B. H. HILL, *contra*.

LUMPKIN, Justice.

The indictment was good in substance, and sufficiently
full to withstand a general demurrer or to support a
conviction as against a motion in arrest of judgment;
but it was wanting in that degree of detail and definite-
ness which the accused had a right to demand before
going to trial on the merits. Upon the assumption
that she was guilty, it would, of course, be easy to per-
ceive that she would know the precise manner in which
she attempted by poison to take Mr. Romare's life; but
on the assumption that she was innocent, and this the law
presumes, it is equally easy to perceive that she is fairly
and reasonably entitled to be informed as to the man-
ner in which she " assaulted" Mr. Romare, or how she
used the poison in endeavoring to murder him. Her
objection, by special demurrer, that this indictment
failed to afford her such information, is not captious,
but is fair and well founded.

There can be little doubt, we apprehend, that at
common law this indictment would not have been suffi-

cient, and if it can be sustained at all in this State, it must be done under the provisions of section 4628 of the code. There are many decisions of this court citing and construing this section, and in several of them indictments have been sustained, because of this section, which would otherwise have been regarded as fatally defective. In quite a number of these cases objections to the sufficiency of the indictment were not taken until after verdict, and there was no difficulty at all in holding that such objections were entitled to far less weight than they would have received if made before pleading to the merits. We have been unable to find any case in our own reports ruling squarely and distinctly that one accused of crime is not entitled to be informed with reasonable certainty of the substantial particulars of the charge against him, when the demand for such information is made before entering the general plea of not guilty. In *Locke's* case, 3 *Ga.* 534, we find, in an able and well-prepared opinion of Judge NISBET, a very clear statement of what should be the rule applicable. On page 540 he uses this language: " The requirement of the statute is, that the offence must be so *plainly* stated that the juryman may *easily* understand its nature. Our construction of this statute is, that the indictment should leave nothing to inference or implication; but that its statements should be so plain that a common man may without doubt or difficulty, from the language used, know what is the charge made against the accused." The statute referred to in the words above quoted was that relating to the offence of bastardy, but the rule is applicable to offences of all kinds. In the case of *Ash* v. *State,* 56 *Ga.* 583, it was held that the failure of an indictment for assault with intent to murder with a pocket-knife to allege the use made of the weapon was not a good ground for arresting the judgment, but it was not held that this objection would not

have been good on special demurrer before or upon arraignment. Again, in *Rataree* v. *State*, 62 *Ga*. 245, this court ruled that it was not good ground for arresting the judgment that an accusation in a city court, charging the accused with an assault, did not specify any act or acts constituting the same; but again this court refused to say that this objection would not have been good on special demurrer before trial. These cases, therefore, afford at least an intimation that they might have been ruled otherwise if the objections had been made at the proper time. In a recent Federal case, that of the United States *v*. Barnaby, 51 Fed. Rep. 20, it was distinctly held that an indictment for an attempt to commit murder, charging the accused with making an assault with a knife upon a person named, without disclosing the character of the knife or averring that he struck with it, was insufficient as to the description of the alleged assault.

In our judgment, the section of our code above cited was not intended to dispense with the substance of good pleading. It simply means that an indictment conforming substantially to its requirements will be sufficient, but it is not designed to deny to one accused of crime the right to know enough of the particular facts constituting the alleged offence to be able to prepare for trial. In Whart. Cr. Pl. & Pr. §166, the following is set forth as one of the objects for which the necessity of particularity in criminal pleading is required: "To enable the defendant to prepare for his defense in particular cases, and to plead in all; or, if he prefer it, to submit to the court by demurrer whether the facts alleged .(supposing them to be true) so support the conclusion in law, as to render it necessary for him to make any answer to the charge." An indictment which charged that an offence was committed on the —— day of —— in a year specified, or one which alleged as the date of

the offence an impossible day, or a day subsequent to the finding of the indictment, would be sufficient in its allegations as to time if no objection was made before pleading to the merits; but if defective in any of the respects indicated, it would be quashed on special demurrer made at the proper time. See *Bailey* v. *State*, 65 *Ga.* 410, and cases there cited, and *Phillips* v. *State*, 86 *Ga.* 427. The decisions in these cases show that this court has not so understood or construed section 4628 of the code as to hold that it denies to one accused of crime the right to have an indictment perfect as to the essential elements of the crime charged. Indeed, the very next section of the code, 4629, declaring that exceptions which go merely to the form shall be made before trial, necessarily means that such exceptions, if well founded and so made, will be good. It would be absurd to provide for the making of exceptions which could never be sustained, and this section draws a clear distinction between those which would be good before trial, and those which would be good after it. Applying to the case at bar what has just been stated, in connection with the rule laid down by Wharton, and bearing in mind that the form of the indictment prescribed in section 4628 of the code itself declares that the offence and the time and place of committing it shall be stated with *sufficient certainty*, we do not think the indictment against Johnson can be upheld. It will be observed that this indictment charges an "assault." An assault may be committed in many ways. If alleged to have been done with a knife, the inference primarily would be that the knife was used in cutting or stabbing; if with a club, that the accused struck or beat the party assaulted; if with a gun or pistol, that the weapon named was used either as a firearm or as a bludgeon. And yet, even in cases like these, there is strong reason for holding that an indictment should disclose with

some degree of particularity the manner in which the
assault was committed. Poison may be used for the
destruction of human life in a great variety of ways.
It may be injected mechanically into the blood, as with
a pin, needle, or other similar instrument capable only of
making a scratch or slight abrasion of the skin, in
which case death might ensue from blood poisoning; it
may be introduced into the stomach by mixture with
food or drink, and thus assimilated; or, in the form of
noxious gases, it may be diffused into the atmosphere,
and by inhalation cause asphyxia resulting in death;
and it may even be introduced into the system by ab-
sorption through the pores of the skin, as would result
from the wearing of infectious clothing, or from hand-
ling or coming into contact with certain poisonous
plants and vines. In the form of vitriol or carbolic
acid, poison may be used as an actual physical weapon,
by throwing it upon another. Nor are the instances
enumerated by any means exhaustive of the various
uses in which this deadly agency may be employed, for
human ingenuity has ever been fruitful not only in sug-
gesting innumerable ways in which the heinous crime
of poisoning may be effected, but in devising methods
which will confound and baffle even the vigilant hound
of suspicion, and conceal the manner in which the ne-
farious deed was perpetrated. It will therefore readily
be seen, from the very nature of the offence—the many
avenues open to its successful accomplishment, and the
cunning and crafty concealment which usually accom-
panies and marks its stealthy footsteps,—that much
more particularity should be required in describing with
sufficient clearness the manner of its commission than
would be requisite in alleging an assault with a knife,
for instance, which human experience teaches us could
be effectively used in one of only two or three ways.
Certainly, where poison is the agency alleged to have

been employed in the commission of the offence, there is abundant reason for describing, at least with some degree of certainty, the manner of its use in an alleged attempt to take the life of another. Clearly, an indictment alleging an assault with poison should be sufficiently full to enable the court to determine from its allegations whether the act or acts set forth would in law constitute or amount to an assault. The indictment before us does not even come up to this requirement. Charging in the most general way an assault made with poison, we are unable to perceive whether or not what the accused did was really an assault; and aside from this defect, we think the indictment still further defective in not informing the accused with more certainty and clearness in what manner the assault is alleged to have been committed, even granting that a bare assault is sufficiently alleged. There are respectable authorities to the effect that an unsuccessful mingling of poison with food or drink with intent to cause death does not constitute an assault with intent to murder, nor, in fact, an assault of any kind. But the indictment before us neither calls upon nor permits us to enter upon an inquiry as to the correctness of this proposition, for the very reason that it fails entirely to state how the poison was used, or in what manner the alleged assault was committed with it. This suggestion, however, we think affords an additional reason for holding, as we do, that the accused was entitled to know what act or acts of hers were relied on by the State as constituting the offence alleged. At the proper time she presented her objection to the sufficiency of the indictment, by a special demurrer clearly setting forth the defects of which she complained; and for the reasons above stated, this demurrer, we think, should have been sustained.

*Judgment reversed.*