### ROBBINS *et al. v.* THE STATE.

COBB, J.   1. The accusation stated the offense substantially in the terms and
    language of the Penal Code, and so plainly that the nature of the offense
    charged would be easily understood by the jury ; and it was therefore suffi-
    cient to withstand a general demurrer.
2. The evidence not being sufficient to show the guilt of the accused beyond
    a reasonable doubt, a new trial should have been granted.
*Judgment reversed.    All the Justices concur, except Simmons, C. J., absent.*

Submitted February 15,—Decided March 3, 1904.

    Accusation of unlawfully preventing laborers.    Before Judge
Norwood.    City court of Savannah.    January 12, 1904.

    A demurrer raised the question whether the accusation set
forth any offense.    It alleged, that the two persons accused, on
November 22, 1903, "did by intimidation and other unlawful
means, to wit by a false and fraudulent offer of transportation
from Savannah, Georgia, to Charleston, South Carolina, said in-
timidation and offer made with the intent and purpose of prevent-
ing one Bristow Mitchell from remaining in and performing his
lawful occupation of laborer, did by means of the aforesaid unlaw-
ful acts attempt to prevent the said Bristow Mitchell, in the State
and county aforesaid, from engaging and remaining in and per-
forming his duties of a laborer in the lawful employment of the
Merchants and Miners Transportation Company."    Exceptions
were taken to the overruling of the demurrer and of a motion for
new trial, this motion containing, among others, the grounds that
the verdict was contrary to law and evidence.    The evidence
showed that the employees of the Merchants and Miners Trans-
portation Company, including the accused, went upon a strike ;
and the company brought men from other places, including Bris-
tow Mitchell, to fill the places of the strikers.    Bristow Mitchell
testified :    I live in Charleston, S. C.    I came to this city about
a month ago.    I was brought over here to work for the Merchants
and Miners Transportation Co.    I am working at their wharf now,

trucking cotton. We sleep down at the wharf, and they feed us. I have seen the two defendants, Stephney Robbins and Jim Montgomery. On Saturday afternoon about two weeks ago I came out from the wharf. Outside of the gate there was a crowd of strikers. I went with some of them to a bar. One of the strikers told me they would give me free transportation to Charleston, and told me to go with them to the union hall. I went to the hall. The prisoners were in the hall when I got there. In the hall were about thirty-five men, among them the men who had been outside of the gate. The president of the union was in the hall with the crowd. The prisoners asked me to go with them. They took hold of me, one on each side. I was a stranger, and do not know the street, but it was in the night, and they carried me down by the canal; and when one of them asked me how much money I had, I became afraid of them, and I reached down in my pocket and pulled out $3.60, and had it in my hand when the policeman came up and arrested them. The defendants themselves never told me that they would give me transportation; other men told me; they were strikers, but I do not know who they were. I went to the hall voluntarily, so I could get transportation. I had been drinking before going in there, but I was not drunk. I do not know how many drinks I had taken. The room was hot; and they held me, one on each side. I never gave these men any of the money; they never asked me for it; they asked me how much I had. I pulled out my money to show them, and just then the policeman came up. They never threatened me. The fare to Charleston is $3.45. I knew what was going on about me.

A police officer testified: They had Mitchell between them when I arrested them. When I got near them they did not see me, and I heard one say, "How much money have you got?" One or the other said to the man, "Give it him." The man ran his hand in his pocket, and was putting the money from his pocket into the other hand, when one of the prisoners said to him, "You will have to get out of this town and give up the money." Then I arrested them. I was about twenty-five feet away when I heard this. I would not be positive as to who said it, or what was the exact language; but that was about what was said. The defendants did not use any violence; they did not

reach out to take the money; I got there too soon for them. I stepped up and arrested them as Mitchell was putting the money from out of his pocket into his hand. He had been drinking. One of the men told him to give it up and leave town, and then it was that he took it from his pocket.

*Edmund H. Abrahams* and *Alexander & Hitch*, for plaintiffs in error, cited, on the demurrer: Clark's Cr. Proc. 156, § 61; *Johnson* v. *State*, 90 *Ga.* 447; Penal Code, § 31. On the evidence: *Fulford* v. *State*, 50 *Ga.* 593, and cit.; 18 Am. & Eng. Enc. L. (2d ed.) 87 (c); Gray *v.* Building Trades Council, 97 N. W. 663.

*W. W. Osborne, solicitor-general,* and *Garrard & Meldrim,* contra.