## 55212. THE STATE v. HIGH.

SMITH, Judge.

We reverse the trial court's sustention of appellee's motion to suppress.

Appellee High was charged with three murders, six kidnappings, two rapes, and one armed robbery. All of these crimes took place in Augusta between August 19 and August 25, 1976. Investigators discovered several similarities between the crimes: the perpetrator used a sawed-off shotgun and blindfolded victims with pieces of their clothing; some victims were placed in trunks of automobiles; surviving victims gave like descriptions of the perpetrator. As a result of evidence police discovered on investigating the August 25 Clay-Hallman kidnapping and rape, police investigation began to focus upon appellee. That crime originated at the intersection of Courtland Drive and Sand Bar Ferry at about 10:30 p.m. Hallman and Clay, the victims, told police that a tall, young, black man with "freckles or blotches" on his face and wearing a red cape came to their car and asked for a ride; upon their acceptance, another black man approached the car from the shadows; both men then exposed sawed-off shotguns and abducted the victims. On August 26 a bus driver informed police that he had been at

the intersection of Courtland Drive and Sand Bar Ferry shortly before the abduction and that, at that intersection, he had seen a black man wearing a red cape playing with the traffic light. The bus driver told police that when he stopped at the corner he asked the black man not to play with the light because he might cause an accident, whereupon another person, in the shadows, told him to "get the hell out of there." The bus driver said the man wearing the red cape was Jose Hines and that he lived at the corner of Courtland and Sand Bar Ferry. On further investigation, the police discovered that the High family, with a son named Jose, lived in a house at that corner.

Police then began their surveillance of appellee, and, on August 27, two policemen were following a car he was driving. Another black man was accompanying appellee. After traveling at speeds of up to seventy miles per hour, appellee's car slowed to a "crawl," and the policemen decided to "pull him over," since he obviously realized he was being followed. After stopping, appellee stepped out of the car, and the policemen recognized that he fit the description given by Clay, Hallman, other victims, and the bus driver. Furthermore, appellee was wearing Pro-Ked tennis shoes, and prints from Pro-Ked tennis shoes had been found at the scene of one of the murders. After noting his shoes and the fact that appellee fit the description, the policemen arrested him. The trial court found that probable cause to arrest did not exist and therefore suppressed appellee's confession and other incriminating, physical evidence as fruits of the illegal arrest.

1. The admissibility of a confession is not a proper issue for adjudication on a motion to suppress. *Jarrell v. State,* 234 Ga. 410 (216 SE2d 258) (1975). Therefore, no proper ruling having been made as to the confession's admissibility, the propriety of its admission is not before us.

2. The police officers who were "tailing" appellee's car had enough reliable information upon which to base their decision to make an investigatory stop. (See *Tuzman v. State,* 145 Ga. App. 761, 766 (1978), for the principle that hearsay information from identified victims of crime or from other identified citizen-informers need not be subject to Aguilar-Spinelli scrutiny for reliability, which

scrutiny is reserved primarily for hearsay from confidential informants, who frequently are themselves members of the criminal community.) The police also had reason to stop appellee because he had been speeding in their presence. Ignoring the fact that appellee had been speeding, that on stopping the car the policeman may not have had probable cause to arrest did not render the stop illegal, for, as this court held in *Radowick v. State,* 145 Ga. App. 231 (1978) "the individual's 'freedom to use public highways' is circumscribed by the State's police power when the officer has 'specific and articulable facts' which warrant a stop of a vehicle to investigate the circumstances which provoke a reasonable and founded suspicion" on the part of police. " '[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' [Cit.] The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response." Adams v. Williams, 407 U. S. 143, 145 (92 SC 1921, 32 LE2d 612) (1972). The stop was legal. Furthermore, upon the policemen's recognition of appellee as fitting the perpetrator's description and their noticing he was wearing Pro-Ked tennis shoes, they obtained probable cause to arrest. The fact that the policemen lacked a warrant did not render the arrest illegal for, under the circumstances of this case, there was "likely to be a failure of justice for want of an officer to issue a warrant." Code § 27-207 (a). Thus, the arrest was legal. Since the trial court granted the motion to suppress for the reason that the suppressed evidence was the product of what it found to be an illegal arrest, we must reverse.

*Judgment reversed. Deen, P. J., and Banke, J., concur.*

ARGUED FEBRUARY 1, 1978 — DECIDED APRIL 6, 1978 — REHEARING DENIED APRIL 28, 1978 — CERT. APPLIED FOR.

*Richard E. Allen, District Attorney,* for appellant.
*John H. Ruffin, Jr.,* for appellee.