### 61713. STARR v. THE STATE.

CARLEY, Judge.

Appellant was convicted of armed robbery. The sole issue on appeal is whether appellant's motion to suppress was erroneously denied.

The relevant facts are as follows: On March 2, 1980, at approximately 3:35 p.m. an armed robbery occurred, the robber apparently leaving the scene on foot. Within five minutes an officer had been dispatched to the scene and he obtained a description of the perpetrator which was then radioed to other law enforcement officers. An immediate lookout was posted for a "white male, . . . , around 25 to 30 years of age, approximately six feet, medium build, mustache, possibly a beard, wearing some type of a yellow cap, long white coat down below the knees, yellow gloves." An off-duty officer radioed that he had seen a man of medium build wearing "a yellow type hat and a long light-colored coat" running to the Colonial Motel. An officer responding to this report went to the motel and ascertained from the desk clerk that a room had just been rented to an individual

who had not arrived in an automobile, having checked in as a "hitchhiker." This officer then radioed that he had located a possible suspect at the motel and another officer arrived within a very short period of time. Further inquiry of the desk clerk was made concerning the physical description of the "hitchhiker" and, while the clerk could not remember "what type of clothing he was wearing," she recalled "he was a fairly young fellow and . . . believed he had a mustache, [but] couldn't remember whether he had a beard or not." Armed with this information and about "15 or 20 minutes" having elapsed since the time of the robbery, the two officers approached the "hitchhiker's" room and knocked on the door. A third officer was stationed some distance away as a "backup." Appellant, apparently having just stepped from the shower and wearing a towel, opened the door to the room. From their position in the open doorway, the officers observed a pair of yellow gloves. Appellant, who otherwise fit the general physical description of the armed robber, was then asked to step back into the room and he was advised that he was a suspect in an armed robbery. The backup officer, seeing his two fellow officers go into the room, also entered. The appellant was asked "to just sit down there on the bed temporarily" while the bathroom was checked to see if appellant was the sole occupant of the room. One of the officers "proceeded to look for weapons" on the bed where appellant had been instructed to sit. When the officer "pulled the mattress back," he discovered "quite a bit of loose change and rolled change underneath . . . "

The coins and the yellow gloves were seized and introduced into evidence at appellant's trial after his motion to suppress those items had been denied. Appellant urges that his motion to suppress this evidence should have been granted because his arrest was illegal under Code Ann. § 27-207 and the warrantless search of his motel room was in violation of the Fourth Amendment.

It is beyond dispute and appellant does not contest that, prior to knocking on the door, the officers had sufficient reason to conduct an investigation of the suspicious hitchhiker to ascertain any possible connection with the armed robbery. *State v. Carter,* 240 Ga. 518 (242 SE2d 28) (1978); *Silas v. State,* 133 Ga. App. 560 (211 SE2d 609) (1974); *State v. High,* 145 Ga. App. 772 (244 SE2d 888) (1978). Thus, when appellant responded to the knock on the door, the police officers, "while rightfully standing before the open doorway of the hotel room for purposes of investigation, observed within the room in plain view" both the yellow gloves and appellant, who matched the general description of the armed robber. *Brooks v. State,* 129 Ga. App. 393, 394 (199 SE2d 578) (1973). At this point the officers had probable cause to arrest appellant without a warrant for the armed

robbery. "After discovering the [yellow gloves], the officer[s] had sufficient information to warrant the reasonable belief that the appellant was in fact the [armed robber] described in the police reports. [They were] accordingly authorized to make the arrest pursuant to Code Ann. § 27-207 to prevent a 'failure of justice for want of an officer to issue a warrant.' [Cits.]" *Reese v. State,* 145 Ga. App. 453, 454 (243 SE2d 650) (1978). "[U]pon the policemen's recognition of appellant as fitting the perpetrator's description and their noticing he [had in his possession a pair of yellow gloves], they obtained probable cause to arrest." *State v. High,* 145 Ga. App. 772, 774, supra. "Here the information provided by the complainant to the police station, which was broadcast over the radio, was verified by on site observation. Under these circumstances, the trial court did not err in concluding there was probable cause for an arrest. [Cits.]" *Bradford v. State,* 149 Ga. App. 839, 841 (256 SE2d 84) (1979).

Appellant contends that because the officers had drawn their guns *before* knocking he was under "arrest" at the very instant he began to open the door and there was no probable cause to arrest him at that time. This argument is without merit. It is apparent that under the circumstances the officers had drawn their guns prior to the door opening because they were conducting an investigation of a *possible* suspect in the commission of an armed robbery and not because they were effectuating an arrest of *the* suspect in the crime. The drawn guns were "authorized to protect the officer[s] who had been notified the robber was armed . . . " *Butts v. State,* 149 Ga. App. 492, 493 (254 SE2d 719) (1979). In short, the guns were exposed out of an understandable prudence and caution for the situation they *might* face when the closed door was opened and not specifically for the purpose of restraining the freedom of appellant. It is clear that, under the facts of this case, appellant was restrained from "walking away" and therefore "arrested" only when he was asked to step back into the room and to sit on the bed. See *Kelly v. State,* 129 Ga. App. 131, 133 (2) (198 SE2d 910) (1973). At that point the officers had observed that appellant matched the physical description of the perpetrator and that he possessed a pair of yellow gloves and, as discussed above, at that time they had probable cause to make an arrest.

Appellant's arrest being lawful though warrantless, a search pursuant to Code Ann. § 27-301 of the "area within [his] immediate presence," including the bed upon which he had been directed to sit, was authorized. See *Humphrey v. State,* 231 Ga. 855 (204 SE2d 603) (1974); *State v. Mathis,* 143 Ga. App. 121 (237 SE2d 643) (1977). Appellant's motion to suppress was properly denied.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

Decided July 10, 1981 —
Rehearing denied July 23, 1981 ▮▮▮▮▮▮▮▮

*Harry J. Fox, Jr.,* for appellant.
*Theron Finlayson, District Attorney, Tony H. Hight, Stephen Pace, Jr.,* for appellee.