A91A0074. FROST v. THE STATE.
(407 SE2d 765)

BEASLEY, Judge.

Frost was charged with the murder of her husband, OCGA § 16-5-1 (a), by shooting and setting fire to him and with arson in the first degree, OCGA § 16-7-60 (a), by setting fire to and damaging his mobile home. She was convicted of arson and of voluntary manslaughter, OCGA § 16-5-2 (a). A new trial was denied.

1. The State moves to dismiss the appeal because of failure to file the brief and enumerations of error by the date this court ordered, but she did so and the motion is denied.

2. In two enumerations, appellant contends respectively that the trial court erred in overruling her demurrer and her plea in abatement to the arson count. She relies on her brief filed with the trial court, without more except to highlight *Johnson v. State*, 90 Ga. 441, 445 (16 SE 92) (1892), for the rule: "one accused of crime [has] the right to have an indictment perfect as to the essential elements of the crime charged." One reason for the rule, as the court gave earlier in the same opinion, is because such person has "the right to know enough of the particular facts constituting the alleged offence to be

able to prepare for trial." Id. at 444. Another reason is so the jury will understand the charge. *O'Brien v. State*, 109 Ga. 51, 52 (1) (35 SE 112) (1899); OCGA § 17-7-54. Appellant points out a third reason, which is to assure that the grand jury properly considered all the elements of the offense in returning the indictment, part of the Fifth Amendment guarantee. See *United States v. Outler*, 659 F2d 1306, 1310 (2) (5th Cir. 1981). The indictment may be tested by asking whether, if defendant admitted what the indictment charged, would defendant be guilty of a crime? See *State v. Howell*, 194 Ga. App. 594, 595 (391 SE2d 415) (1990); *Hilliard v. State*, 87 Ga. App. 769, 772 (75 SE2d 173) (1953).

Appellant's complaint is that the charge was fatally defective because it did not allege an essential element, intent or criminal negligence, thus failing to give notice of the manner in which the crime was allegedly committed. Appellant was charged with "unlawfully" damaging by means of fire her husband's occupied dwelling house without the consent of her husband or of the lienholder.

The indictment says "unlawfully." Although *Dye v. State*, 177 Ga. App. 813 (341 SE2d 469) (1986),[1] dealt with an indictment which tracked the Code, which this case does not, the court expressed the view that "[t]he allegation that appellant acted 'unlawfully' is sufficient to encompass both the intent to commit the proscribed act and the knowledge necessary to form that intent." It referred to *McDonald v. State*, 222 Ga. 596 (1) (151 SE2d 121) (1966) and OCGA § 16-2-1.

"Unlawfully" in this instance means as prohibited by OCGA § 16-7-60. Although the indictment does not recite the Code section, compare *State v. Howell*, 194 Ga. App. 594 (391 SE2d 415) (1990) (a specific intent case), it is obvious from defendant's brief below that she was unquestionably aware that she was charged with a violation of OCGA § 16-7-60. OCGA § 16-7-60 precedes each action verb with the adverb "knowingly."

"Knowingly" relates to intent which, since it is used in the context of a prohibition of activity for which there is punishment, means criminal intent. In other words, as related to the indictment, defendant was charged with knowingly damaging the dwelling by fire. "Knowingly" is the precise element which makes a person's damaging of property by fire arson. If the act of damaging is not done "knowingly," it is not arson. The use of the word "knowingly" imports the criminal intent element contained in OCGA § 16-2-1. As defendant recognizes, the statute need not contain the word "intentionally."

---

[1] Overruled in part on another ground in *Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990).

*Sabel v. State*, 248 Ga. 10, 13 (2) (282 SE2d 61) (1981).

The use of the word "unlawfully" in the indictment, instead of the use of the word "knowingly," did not fail to charge defendant with a crime by the omission of the element of intent, nor did it fail to put defendant on notice that she was charged with committing the act with intent rather than with criminal negligence. See OCGA § 16-2-1. Her argument that the indictment did not apprise her of *which* of the two manners provided in OCGA § 16-2-1 was alleged is not persuasive.

We find no violation in the indictment of defendant's right to notice as asserted under Georgia law and under the Sixth and Fourteenth Amendments to the United States Constitution. See, for example, *Cole v. Arkansas*, 333 U. S. 196, 201 (68 SC 514, 92 LE 644) (1948); *In re Oliver*, 333 U. S. 257, 273 (68 SC 499, 92 LE 682) (1948). ("A person's right to reasonable notice of a charge against him [or her] . . . [is] basic in our system of jurisprudence.")

3. Appellant contends that the trial court erred in denying her motion for new trial on the general grounds.

(a) She maintains that the evidence of manslaughter was insufficient because the only evidence connecting her to the death of her husband was her custodial statement which was inadmissible because she was not adequately advised of her *Miranda* rights.

Contrary to her contention, there was substantial evidence other than the statement at issue connecting appellant to her husband's death, although this is not dispositive. As to the unspecified deficiency in *Miranda* rights, the record discloses the background that appellant gave several varying statements to authorities, some of which were made prior to her being in custody. The issue of the voluntariness of the statements, including the now objected-to custodial statement, was thoroughly heard at a lengthy pretrial evidentiary hearing and again explored at trial.

Getting to the issue here, there was evidence that appellant was timely given the *Miranda* warnings by a reading of "the Miranda card." There was also a tape recording of the subject incriminating statement which reflected that appellant was advised of her rights twice more prior to making the statement and that she wished to speak because "I think it's time y'all knew the truth." She further indicated she did not object to the audio recording of her statement, and she confirmed at the end of it that she had been advised of her rights and gave the statement freely and voluntarily. There was evidence that in addition appellant signed a waiver of her *Miranda* rights, and that members of her family were outside at the time of the interview.

(b) As to the arson, she maintains that the home was not occupied at the time of the fire, inasmuch as the evidence established that

her husband was already dead, and that there was no evidence of either her husband's or the lienholder's ownership or security interest in the burned dwelling.

The alleged defects in the evidence of arson are without merit. "In a case of arson, the corpus delicti consists in the proof of three fundamental facts: first, the burning of the house described in the indictment; second, that a criminal agency was the cause of the burning; and third, that the defendant was the criminal agency. These principles are elementary and need no citation of authorities. The presumption is that any fire is a result of accident and providential cause rather than criminal design. When nothing appears other than the burning, of course the burden is on the State to overcome the presumption that the burning occurred from providential or accidental cause. It must appear from either direct or circumstantial evidence, beyond a reasonable doubt, that the fire was of incendiary origin and that the defendant was the guilty party. *Lockhart v. State*, 76 Ga. App. 289 (45 S. E. 2d 698)." *Hurst v. State*, 88 Ga. App. 798, 799 (78 SE2d 80) (1953) "(dwelling house arson)." See *Bragg v. State*, 175 Ga. App. 640, 641 (1) (334 SE2d 184) (1985) (first degree arson). The offense is committed whether or not the dwelling is occupied. OCGA § 16-7-60 (a). See *State v. Hovers*, 148 Ga. App. 431, 432 (251 SE2d 397) (1978).

The dwelling was occupied at the time the fire was set. The evidence was undisputed that at the time of the fire the trailer was the marital home of the deceased and the appellant. By appellant's own statement to authorities, she herself was in the trailer at the time she intentionally set fire to it in order to cover up evidence that she shot her husband; she wanted it to appear that her husband accidentally perished in the fire.

As to the contention of lack of evidence of ownership or security interest, in an arson case "[l]awful occupancy by one in charge constitutes ownership as contemplated by the statute, and the question of legal title is not involved." *Tukes v. State*, 125 Ga. App. 831 (189 SE2d 135) (1972). See *Rash v. State*, 182 Ga. App. 655 (356 SE2d 719) (1987). Since the "of another" aspect was proved, we need not address whether there was proof of the alternative "security interest" aspect.

The evidence at trial was sufficient to enable the jury to find appellant guilty of voluntary manslaughter and arson in the first degree beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. Appellant contends that reversal is mandated because the trial court erred in quashing subpoenas duces tecum to crime lab personnel asking that they produce their work product used to arrive at opinions expressed in a scientific report supplied to the defense pur-

suant to a statutory demand.

The trial court quashed the subpoenas relying on the holdings in *Eason v. State*, 194 Ga. App. 678 (1) (391 SE2d 427) (1990) and *Dye*, supra at 814 (3). Subsequently, the Supreme Court in *Eason v. State*, 260 Ga. 445 (396 SE2d 492) (1990), determined that a criminal defendant's right of cross-examination in Georgia includes the right to subpoena for the purpose of cross-examination those memos, notes, graphs, computer printouts, and other data which the State Crime Lab employee relies upon to support his or her testimony and opinion during direct examination. The quashing of the subpoenas in this case does not require reversal. Appellant was not denied the right to cross-examination in this regard inasmuch as neither the State nor appellant called the subpoenaed crime lab personnel to testify at trial. "In order for an alleged error to be grounds for reversal, appellant must show not only error, but also ensuing harm. [Cit.]" *Bowen v. State*, 170 Ga. App. 49, 50 (1) (316 SE2d 33) (1984).

5. Appellant contends that the trial court erred in instructing the jury, "When witnesses appear and testify it is presumed that they speak the truth." She urges that the charge improperly interfered with the jury's sole fact-finding authority and was particularly harmful to her because the jury was in effect told even in the face of conflicting evidence to presume the truthfulness of the deputy sheriff's testimony that he advised appellant of her *Miranda* rights.

The Georgia Supreme Court has recommended that use of the challenged instruction be discontinued as possibly "misleading" although not unconstitutionally burden-shifting. *Noggle v. State*, 256 Ga. 383, 386 (4) (349 SE2d 175) (1986). The charge has not been found to be reversible error. See *Coleman v. State*, 189 Ga. App. 366, 367 (5) (375 SE2d 663) (1988), and the cases cited therein. Moreover, the record does not support appellant's contention regarding conflict in the specified evidence.

6. Based upon the same argument urged in Division 5, appellant contends that the trial court erred in instructing the jury, "If upon a consideration of the evidence in the case you find there is a conflict in the testimony of the witnesses or a conflict between a witness or witnesses, it is your duty to settle this conflict, if you can, without believing that any witness made a false statement. If you cannot do this, it then becomes your duty to believe that witness or those witnesses you think best entitled to belief."

Appellant omits the last statement in such instruction to the jury that, "It is for you alone to determine what testimony you will credit and what testimony you will discredit." The totality of the instruction, taken from Volume 2 of the Suggested Pattern Jury Instructions in Criminal Cases, cannot reasonably be heard by the jury to curtail or interfere with its fact-finding role in any way.

7. Lastly, appellant contends that the trial court erred in instructing the jury, "If you find that a witness has been successfully impeached by proof of previous contradictory statements, you may disregard that testimony unless it is corroborated by other creditable testimony and the credit to be given to the balance of the testimony of the witness would be for you members of the jury to determine." While she concedes that the charge "may have been abstractly a sound statement of law," appellant claims its only purpose in her case was to cause "prejudicial confusion" in the minds of the jury inasmuch as she did not testify or call any witnesses. However, she attacked the credibility of State's witnesses by cross-examination which included efforts to show inconsistencies.

The same sound legal principles applied to the jury's assessment of the credibility of any of the witnesses, whether the State's or the defendant's. The charge as a whole was not confusing so as to cause prejudice to appellant. See OCGA § 24-9-80.

*Judgment affirmed. Banke, P. J., and Carley, J., concur.*

DECIDED JUNE 6, 1991 —
RECONSIDERATION DENIED JULY 2, 1991 — 

*Larsen & Larsen, W. Washington Larsen, Jr.*, for appellant.
*Richard A. Malone, District Attorney*, for appellee.