## A96A2030. PICKENS v. THE STATE.
### (484 SE2d 731)

BEASLEY, Judge.

Pickens appeals from his conviction and sentence for trafficking in cocaine, OCGA § 16-13-31, and from the denial of his motion for new trial.

1. The first two enumerations of error relate to the denial of the motion to suppress evidence that Pickens maintains was obtained through an illegal search and seizure in violation of the Fourth Amendment to the United States Constitution. "On reviewing a trial court's ruling on a motion to suppress, evidence is construed most favorably to uphold the findings and judgment." *Burse v. State*, 209 Ga. App. 276 (433 SE2d 386) (1993). The court's findings of fact " 'will not be disturbed if there is any evidence to support them.' " (Citation omitted.) *State v. Williams*, 220 Ga. App. 100, 102 (2) (469 SE2d 261) (1996).

Kitty Smith, assistant manager of a motel in an area where such establishments were "notorious" for drug and prostitution activities, received an anonymous phone call from a male informing her that Pickens was selling marijuana and cocaine out of his motel room, and that the reason for the call was that the caller did not want Pickens selling to the people who were buying. She confirmed from motel records that Pickens rented that room, and she then contacted the police. Officer Krueger responded and met with her, verified which room was rented to Pickens, went there and knocked on the door to investigate whether there was any truth to the call. The officer had been sent to that motel and others in the area many times on complaints of drugs and prostitution.

Pickens answered and did not open the door all the way but merely stuck his head out. Only his head and one shoulder were visible. The officer explained why he was there and asked Pickens to confirm his identity, which he did. To protect his own safety, and that of his backup, the officer asked Pickens to step out from behind the door. Pickens consented, and as he opened the door, the officer saw a table holding an open black gun case containing plastic bags filled with white powder, which appeared to be cocaine. Krueger attempted to step through the threshold and Pickens slammed the door against the officer twice, for which Pickens was arrested for simple battery. The officer entered and seized the gun case, drugs, paraphernalia, telephone pagers, and a significant amount of cash from the room.

(a) Pickens contends the call from the anonymous tipster was insufficient to establish articulable suspicion to justify an approach to Pickens' motel room under *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968), and its progeny. He argues that the tip lacked sufficient "indicia of reliability" to justify the approach, citing *Alabama v. White*, 496 U. S. 325 (110 SC 2412, 110 LE2d 301) (1990).

The first question is whether the initial contact between Pickens and Officer Krueger constituted a "seizure." The Fourth Amendment governs even those seizures amounting to only a brief detention, as in the typical *Terry* stop, which must be supported by articulable suspicion. *Moran v. State*, 170 Ga. App. 837, 840 (1) (318 SE2d 716) (1984). Contact between police and citizens implicates no Fourth Amendment interest, unless " 'in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " Id. and cites therein; *O'Donnell v. State*, 200 Ga. App. 829, 830 (1) (409 SE2d 579) (1991).

The State responds that the encounter did not even require articulable suspicion because it was only "the mere accosting by an officer usually requesting name and identification." *Exposito v. State*, 191 Ga. App. 761, 762 (1) (382 SE2d 412) (1989). "There is no threshold requirement and indeed the individual may refuse to answer or ignore the request and go on his way if he chooses, for this does not amount to any type of restraint and is not encompassed by the Fourth Amendment." Id.

Krueger's approach to Pickens' motel room does not implicate the Fourth Amendment, since there was no "stop" for *Terry* purposes. Accordingly, it is unnecessary to apply the "articulable suspicion" analysis of *Alabama v. White*. Having received the tip, Krueger was authorized to respond to the call and had sufficient reason, by way of prior experience and the nature of the call, to investigate it. *Starr v. State*, 159 Ga. App. 386, 387 (283 SE2d 630) (1981).

Next, Krueger was permitted to knock on Pickens' door without an articulable suspicion, in order to investigate the report of a crime. *Gilreath v. State*, 247 Ga. 814, 819 (1) (279 SE2d 650) (1981). "Where a police officer enters upon private property only to the extent of knocking on outer doors, the Fourth Amendment is not violated." *State v. Zackery*, 193 Ga. App. 319, 320 (387 SE2d 606) (1989). He was not even on defendant's property when he knocked; the passageway or corridor where he was standing when he knocked was public. He went to the motel room door "on the same route as would any guest, deliveryman, postal employee, or other caller." *State v. Nichols*, 160 Ga. App. 386 (287 SE2d 53) (1981).

The officer's inquiry as to Pickens' identity and his asking Pickens to step outside for safety reasons were permissible actions that did not rise to the level of a seizure. See *State v. Westmoreland*, 204

Ga. App. 312 (1) (418 SE2d 822) (1992), citing *Florida v. Bostick*, 501 U. S. 429 (111 SC 2382, 115 LE2d 389) (1991).

(b) Pickens' first enumeration also alleges Room 220 of the motel was his home, and that Officer Krueger's stepping over the threshold and looking into the room constituted an unlawful warrantless search. Pickens did have a "constitutionally protected reasonable expectation of privacy" in his motel room. *Katz v. United States*, 389 U. S. 347, 360 (88 SC 507, 19 LE2d 576) (1967); *Oliver v. United States*, 466 U. S. 170, 177 (III) (104 SC 1735, 80 LE2d 214) (1984). It thus is accorded the same Fourth Amendment considerations as a private home. *Katz*, supra at 359; *United States v. Jeffers*, 342 U. S. 48, 51 (72 SC 93, 96 LE 59) (1951).

In *Carranza v. State*, 266 Ga. 263 (467 SE2d 315) (1996), the Supreme Court observed that a motel room is akin to a private home for Fourth Amendment purposes: " 'It is axiomatic that the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (Cit.) And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. (Cit.)' *Welsh v. Wisconsin*, 466 U. S. 740, 748 (II) (104 SC 2091, 80 LE2d 732) (1984). . . . [E]ven where probable cause exists, warrantless intrusion of a person's home is prohibited . . ., absent consent or a showing of exigent circumstances. *Steagald v. United States*, 451 U. S. 204, 211 (III) (101 SC 1642, 68 LE2d 38) (1981)." Id. at 264-265 (1). Pickens contends there were no exigent circumstances or consent for the warrantless intrusion of his room.

The "plain view" doctrine, as explicated in *Coolidge v. New Hampshire*, 403 U. S. 443, 468 (II) (C) (91 SC 2022, 29 LE2d 564) (1971), applies. It requires the existence of three criteria: (1) there must be a prior valid intrusion onto a person's property before the evidence is observed and seized; (2) discovery of the evidence must be inadvertent; and (3) it must be apparent that the item seized is evidence or contraband. All three factors are present. Krueger validly went to Pickens' motel room to investigate a complaint of illegal activity in progress and knocked on the door, as discussed in Division 1 (a).

When Pickens opened the door, it became reasonable for Krueger to believe Pickens might be armed because of his knowledge of the high crime area, the nature of the crime he was investigating, and the fact that Pickens concealed his entire body behind the door, except for his head and shoulder. A request for Pickens to step out from behind the door, to secure the officers' safety, was sensibly cautious. It is " 'not unreasonable for officers to anticipate that those who are suspected of involvement in the drug trade might be armed.

(Cit.)' [Cit.]" *State v. Jarrells*, 207 Ga. App. 192, 193 (4) (427 SE2d 568) (1993).

Krueger's sighting of the cocaine occurred only when Pickens consented to open the door, and the discovery was inadvertent. From Krueger's position at the doorway, a place where he was lawfully entitled to be, he saw what he reasonably believed was in all likelihood cocaine. Krueger was "rightfully standing before the open doorway of the [m]otel room for purposes of investigation" when he saw the contraband. *Brooks v. State*, 129 Ga. App. 393, 394 (3) (199 SE2d 578) (1973). "A police officer may seize what is in plain sight if, as here, he is in a place where he is constitutionally entitled to be. [Cits.]" *State v. Brown*, 158 Ga. App. 312, 314 (279 SE2d 755) (1981). See also *State v. Brooks*, 160 Ga. App. 381 (287 SE2d 95) (1981).

The plain view exception to the warrant requirement is one of exigent circumstances and covers the discovery of incriminating evidence (the cocaine in the gun case) that is not a result of a search. *State v. O'Bryant*, 219 Ga. App. 862 (467 SE2d 342) (1996). Where a plain view seizure takes place, there is no search. *Nichols*, supra. The legal principles applicable to a search are inapposite, *Galloway v. State*, 178 Ga. App. 31 (342 SE2d 473) (1986), and this is "true whether or not the officer expected or suspected that he would discover the object seized." Id. at 35. Accord *Hatcher v. State*, 141 Ga. App. 756 (234 SE2d 388) (1977) (police observed stolen articles in plain view in hotel room when the defendant opened the door in response to the officer's knock; evidence properly admitted).

After what had been observed from the doorway was seized, the officers were authorized to search for additional contraband and incriminating evidence pursuant to the seizure.

It was not error to deny the motion to suppress the evidence and to admit it at trial.

(c) The second enumeration is that the court erred in refusing to allow Pickens to present additional evidence in support of his motion to suppress. Long after the original hearing and the ruling denying the motion, and well into trial, Pickens asked to testify outside the presence of the jury. The request was denied, and although the trial court was prepared to allow counsel to proffer to what Pickens would testify regarding the circumstances of his arrest and the search and seizures, it would not permit a proffer if it related to issues already decided at the motion hearing.

Pickens invokes OCGA § 17-5-30, claiming the court failed to "receive evidence out of the presence of the jury on any issue of fact necessary to determine the motion." He has not shown how he was harmed or prejudiced by the refusal, which he must demonstrate in order for a violation of OCGA § 17-5-30 to constitute reversible error. *State v. Peabody*, 247 Ga. 580, 582 (5) (277 SE2d 668) (1981).

His request was tantamount to asking the court to reconsider the motion to suppress and accept new evidence, which it was not obligated to do. This was not the type situation described in *Chastain v. State*, 158 Ga. App. 654 (281 SE2d 627) (1981), where "[t]he legality of the search too often cannot truly be determined until the evidence at the trial has brought all circumstances to light. New facts, new light on credibility of government witnesses, or other matters appearing at trial may cast reasonable doubt on the pretrial ruling. It then becomes the duty of the trial judge to consider de novo the issue of suppression and, if necessary, hold a hearing out of the presence of the jury." (Citations and punctuation omitted.) Id. at 655. The motion hearing was held in compliance with the statute, and Pickens had the opportunity to testify but chose not to do so. He could not demand, due to a change of mind, the opportunity to present additional or contradictory evidence at a rehearing. Id. Accord *State v. Marcus*, 206 Ga. App. 385, 386 (1) (425 SE2d 351) (1992). The decision whether to set aside its previous order denying the motion to suppress was within the discretion of the trial court. *Martinez-Rodriguez v. State*, 195 Ga. App. 491, 493 (4) (393 SE2d 748) (1990). It was not abused.

2. The State moved to prohibit Pickens from arguing any Fourth Amendment matters to the jury during closing argument. Pickens opposed the motion, contending that in slamming the door on Officer Krueger he was simply defending his habitat, making his arrest for simple battery illegal. He contends the legality of his warrantless arrest was a jury question, citing *Ridley v. State*, 176 Ga. App. 669 (337 SE2d 382) (1985); *Davis v. State*, 172 Ga. App. 193, 194 (1) (322 SE2d 497) (1984). According to Pickens, the court committed harmful error in granting the State's motion and not allowing him to argue the point to the jury, since testimony suggested that the search was conducted incident to illegal arrest, which would have made the fruits of the search excludable.

Pickens does not identify a place in the record where testimony suggests that his motel room was searched incident to his arrest for simple battery, and we have found none. As discussed in Division 1 (b), no search was even conducted until after contraband was seen in plain view.

Moreover, a jury determines the legality of an arrest only when the possibility of an illegal arrest would have justified the accused's actions in defending against the arrest and thus provides a defense to the offense charged. *Roberts v. State*, 175 Ga. App. 326, 331 (333 SE2d 189) (1985) (Beasley, J., concurring specially).

Determining the validity of Pickens' arrest was not to ascertain if he had a defense to the crime for which he was charged, i.e., drug trafficking, but instead was for the legal issue of evidence admissibil-

ity vis-a-vis the Fourth Amendment. Uncontroverted testimony that Pickens committed a battery was heard at the motion to suppress hearing, where the court sits as the exclusive factfinder pursuant to OCGA § 17-5-30 (a). It requires the judge to "receive evidence out of the presence of the jury on any issue of fact necessary to determine the motion." OCGA § 17-5-30 (b). Accordingly, Pickens was not entitled to a jury decision on this issue. *Rogers v. State,* 155 Ga. App. 685, 686 (272 SE2d 549) (1980).

3. Two enumerations of error relate to the absence from trial of Kitty Smith, who had left her employment at the motel and moved out of state.

(a) Pickens asserts the court erred by precluding him from reading into evidence Smith's sworn testimony taken at the motion to suppress hearing, because she could not be located to testify at trial after a diligent search. Smith testified she had given a key to Pickens' room to Officer Krueger, who initially denied he had been given a key and later testified he did not remember, since at times police are given room keys in these situations and not at others. Pickens desired to use Smith's testimony to impeach Krueger.

OCGA § 24-3-10 provides, "The testimony of a witness since deceased, disqualified, or inaccessible for any cause which was given under oath on a former trial upon substantially the same issue and between substantially the same parties may be proved by anyone who heard it and who professes to remember the substance of the entire testimony as to the particular matter about which he testifies." This exception to the hearsay rule permits but it does not mandate admission of such testimony, especially when duplicative of other evidence admitted. A Risk Management Report prepared by motel personnel indicated Krueger was supplied with the key. See generally *Chambers v. State,* 205 Ga. App. 78, 79 (2) (421 SE2d 326) (1992); see also *Williams v. State,* 214 Ga. App. 280, 281 (4) (447 SE2d 676) (1994), aff'd, 265 Ga. 471 (457 SE2d 665) (1995): "Under OCGA § 24-3-10, the testimony of an unavailable witness given at a previous trial *may* be admitted at a subsequent proceeding. . . ." (Emphasis supplied.) *Williams,* 214 Ga. App. at 281-282 (4).

The trial court ruled that if used solely for the purpose of impeaching Officer Krueger, Smith's testimony had no probative value. Krueger and Smith contradict one another as to the room key, but the discrepancy is immaterial because the key was not used, and there is no evidence that false testimony was given wilfully or knowingly, which Pickens also must show in order to apply the maxim "False in one thing, false in everything." See generally Green, Ga. Law of Evidence, § 133 (4th ed. 1994).

The State contends that Smith's entire testimony was relevant only to the Fourth Amendment issues already decided adversely to

Pickens. But Smith not only took the call from the anonymous tipster, she went to the room when summoned by the police and actually saw contraband. Absent abuse, it is within the sound discretion of the court to exclude even relevant evidence " 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *Hicks v. State*, 256 Ga. 715, 720 (13) (352 SE2d 762) (1987). The evidence would have been cumulative of Krueger's testimony, except as to the room key, a nonmaterial matter. We find no abuse.

(b) Pickens claims the court erred in refusing to grant a continuance for him to find Smith to testify. "A motion for continuance based on absence of a witness is addressed to the sound discretion of the trial judge and an appellate court will not interfere unless it is clearly shown it has abused its discretion." *Grimes v. State*, 168 Ga. App. 372, 377 (6) (308 SE2d 863) (1983).

"In all cases wherein a continuance is sought upon the ground of the absence of a witness, the movant ' "must make a showing of the requirements set forth in OCGA § 17-8-25 (cit.), i.e., the witness is absent, he has been subpoenaed, he does not reside more than 100 miles from the place of trial, his testimony is material, the absence is not with permission of the applicant, his testimony can be procured by the next term of court, the facts expected to be proved, and that application is not made for the purpose of delay." (Cit.)' [Cit.] Each of the requirements set forth in OCGA § 17-8-25 must be met before an appellate court may review the exercise of the trial court's discretion in denying a motion for continuance based upon the absence of a witness. [Cit.]" *Garrett v. State*, 202 Ga. App. 463 (414 SE2d 693) (1992).

Pickens argues that Smith was a critical witness, that she was unavailable after diligent search, and that her testimony was necessary for him to receive a fundamentally fair trial under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution. He fails to show how Smith's absence harmed him, or even that her testimony would be material, as discussed in Division 3 (a). " 'In order for an alleged error to be grounds for reversal, appellant must show not only error, but also ensuing harm. (Cit.)' [Cit.]" *Frost v. State*, 200 Ga. App. 267, 271 (4) (407 SE2d 765) (1991). See also *Gay v. State*, 220 Ga. App. 78 (467 SE2d 383) (1996).

Pickens did not show he had met the statutory requirements of OCGA § 17-8-25, although his counsel knew for more than a month that the State would not call Smith as a witness. The motion for continuance was properly denied.

4. Pickens challenges the court's denial of his motion for mistrial after witness Linn revealed the existence of the Risk Management

Report prepared by motel personnel which indicated Krueger was supplied with the key to Pickens' room, and that Smith had authorized Krueger to enter Pickens' room. The document purportedly was generated by Smith for the motel's risk management, and the district attorney failed to provide it to Pickens pursuant to his discovery request until the week of trial.

Pickens maintains the document was exculpatory and that the State was thus required to provide it pursuant to his *Brady* motion. See *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). For the reasons cited in Division 3 (a), the document was not exculpatory. Even if it were, Pickens has not shown how he was harmed, since the court allowed the document into evidence over the State's objection. A party asserting error on appeal must show harm as well as error. *Frost*, supra.

5. The denial of Pickens' motion to dismiss, based on discovery violations and destruction of evidence, is enumerated as error.

Police seized two gun cases, rolling papers, cash, pills, scales, and beepers on the scene, in addition to the drugs Pickens was charged with possessing. Much of this evidence, except for the drugs, was destroyed or otherwise unavailable at trial. Although public safety departmental policy normally requires that physical evidence be kept until case resolution, the cash was the subject of a forfeiture proceeding, and the other evidence was destroyed at the time the forfeiture order was issued. Pickens made a timely *Brady* motion in which he requested "[a]ny and all tangible objects intended to be introduced into evidence by the State." The court conducted an in camera inspection of the State's file and found no exculpatory material and denied Pickens' motion.

"In dealing with the failure of the state to preserve evidence which might have exonerated the defendant, a court must determine both whether the evidence was material and whether the police acted in bad faith in failing to preserve the evidence. *Arizona v. Youngblood*, 488 U. S. 51 (109 SC 333, 102 LE2d 281) (1988). To meet the standard of constitutional materiality, the evidence must possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U. S. 479 (104 SC 2528, 81 LE2d 413) (1984)." *Walker v. State*, 264 Ga. 676, 680 (3) (449 SE2d 845) (1994).

Pickens does not explain how the destroyed evidence was exculpatory. To the contrary, it was inculpatory, since such articles are collectively suggestive of illegal drug trade. *Shook v. State*, 221 Ga. App. 151, 152 (470 SE2d 535) (1996).

6. In three enumerations of error, Pickens challenges the sufficiency of the evidence. On appeal, it is viewed in the light most

favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; additionally, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). *Howard v. State*, 261 Ga. 251, 252 (403 SE2d 204) (1991). Each of these enumerations merely restates arguments made in other enumerations, particularly the Fourth Amendment argument: if the evidence seized in the motel room had been suppressed, there would be insufficient evidence to convict Pickens. Since the evidence was properly admitted, there was ample evidence to convict Pickens of the offense charged, under the constitutional standard.

7. Pickens' claims of errors in the court's jury charge is unsupported but for mere conclusory statements. The enumeration is deemed abandoned. Court of Appeals Rule 27 (c) (2).

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 14, 1997 —
RECONSIDERATION DENIED MARCH 31, 1997 — ■

*Ralph J. Hunstein*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Gregory J. Lohmeier, Robert M. Coker, Assistant District Attorneys*, for appellee.