### A09A1141. JOHNSON v. THE STATE.
(685 SE2d 339)

MILLER, Chief Judge.

Following a bench trial, Joshua James Johnson was convicted of driving under the influence of alcohol, per se (OCGA § 40-6-391 (a) (5)).[1] On appeal from his DUI conviction, Johnson contends that the trial court erred in denying his motion to suppress because he was unlawfully seized by a police officer who ordered him to leave his home. For the reasons set forth below, we find that Johnson was not unlawfully seized and affirm.

In considering an appeal from a denial of a motion to suppress, this Court construes the evidence in favor of the

---

[1] Johnson was also convicted of failure to report accident (OCGA § 40-6-273), failure to maintain lane (OCGA § 40-6-48), and driving too fast for conditions (OCGA § 40-6-180).

trial court's ruling, and we review de novo the trial court's application of the law to undisputed facts. Additionally, we must defer to the trial court's determination on the credibility of witnesses, and the trial court's ruling on disputed facts must be accepted unless it is clearly erroneous.

(Citation omitted.) *Coursey v. State*, 295 Ga. App. 476 (672 SE2d 456) (2009).

So viewed, the evidence shows that on the evening of November 25, 2007, a Georgia State Patrol trooper was dispatched to the scene of a reported accident. The trooper located a car that had run off the road and struck a tree, but the driver was not at the scene. A man reported witnessing the driver walking away with blood on his right ear and on his chest. The trooper "ran the tag," which showed that the wrecked car was registered to Johnson and that Johnson's address was approximately half-a-mile from the crash site. The trooper drove to Johnson's address but was unable to locate the exact apartment. In the course of the investigation he was flagged down by Johnson's father, who advised the trooper that his son had been in an accident. Johnson subsequently called his father's cell phone, and the trooper used the phone to speak with Johnson. The trooper learned that Johnson was home and informed him that he would be "down there to get you in just a minute."

The trooper followed Johnson's father to Johnson's apartment. Johnson's father knocked on the door. When Johnson answered, the trooper said "come on out here," and Johnson almost immediately stepped out of the apartment. The trooper did not enter the home or touch Johnson before he exited.

The trooper detected a strong odor of alcohol coming from Johnson's breath and noticed that Johnson's speech was somewhat slurred and that he had bloodshot, glassy eyes. After patting Johnson down on the porch outside the apartment door, the trooper escorted him to the patrol car. The officer explained to Johnson that he was not under arrest, but that he would have to be handcuffed in order to ride in the patrol car.

The officer handcuffed Johnson, drove a short way to Johnson's car, and removed the restraints. With Johnson's consent, the trooper conducted a field sobriety test. After conducting the test, the trooper informed Johnson that he was under arrest for driving under the influence of alcohol and read him the implied consent notice. Johnson later submitted to a blood test, which showed blood alcohol in a concentration of 0.104 grams per 100 milliliters.

As a rule, to "justify a nonconsensual, warrantless intrusion into a person's home, there must exist probable cause for the arrest or search inside the home and a showing of exigent circumstances."

(Citations omitted.) *Threatt v. State*, 240 Ga. App. 592, 595 (1) (524 SE2d 276) (1999). See generally *Payton v. New York*, 445 U. S. 573, 576 (100 SC 1371, 63 LE2d 639) (1980) (the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest"). Relying primarily on foreign authority, Johnson argues that he was seized when the officer ordered him to leave his apartment, and that the trooper lacked a warrant or exigent circumstances which would justify a search or seizure within the residence. See, e.g., *State v. Dahl*, 915 P2d 979, 986 (Ore. 1996) (finding that under the Fourth Amendment and the Oregon Constitution, police are not permitted "without a warrant based on probable cause or probable cause plus exigent circumstances, to seize a person inside his house by ordering that person to emerge from his house"). We disagree.

This court recently touched on this issue in *Dade v. State*, 292 Ga. App. 897 (666 SE2d 1) (2008). There, we concluded that although police never entered the house, the Fourth Amendment required exigent circumstances — and not merely the reasonable suspicion of criminal activity contemplated by *Terry*[2] — for officers to order the defendant from a home at gunpoint. Id. at 901-902. Notwithstanding *Dade*, Johnson was not unreasonably seized under the circumstances of this case. First, "[w]here a police officer enters upon private property only to the extent of knocking on outer doors, the Fourth Amendment is not violated." (Citation and punctuation omitted.) *Pickens v. State*, 225 Ga. App. 792, 793 (1) (a) (484 SE2d 731) (1997). Thus, the trooper was authorized to go to the door of Johnson's apartment in the course of investigating the crash. Id.

Second, Johnson came to the doorway to meet the officer and his father and then almost immediately stepped onto the porch upon the officer's instruction to step outside. We have previously found that if a suspect complies with an officer's request to step outside the home and is arrested on the porch, the detention does not occur inside the home for purposes of Fourth Amendment analysis. See *Keyser v. State*, 187 Ga. App. 95 (1) (369 SE2d 309) (1988) ("appellant's arrest . . . occurred on the front porch of his house, after he had complied with the request of a police officer to step outside. An arrest of appellant under such circumstances would not constitute an arrest which was made inside his home"). See generally *United States v. Santana*, 427 U. S. 38, 42 (II) (96 SC 2406, 49 LE2d 300) (1976) (for Fourth Amendment purposes, the threshold of a dwelling is a public place).

Third, the trooper did not force Johnson to cross the threshold.

---

[2] *Terry v. Ohio*, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

Our analysis in *Dade* was in light of "police conduct in ordering a person out of a home at gunpoint." 292 Ga. App. at 901. Here, the officer, who was not brandishing a weapon or otherwise threatening Johnson, simply instructed him to step outside. "*Payton* keeps the officer's body outside the threshold, not his voice. It does not prevent a law enforcement officer from telling a suspect to step outside his home and then arresting him without a warrant." *Knight v. Jacobson*, 300 F3d 1272, 1277 (11th Cir. 2002). Compare *Dahl*, 915 P2d at 982-985 (appellant, who was ordered by police to come out of the house with his hands up, was seized while in his house).

In view of the foregoing, we conclude that Johnson was not unlawfully seized within his home when the trooper met Johnson at the threshold of his apartment, told him to "come on out," and Johnson chose to comply with the instruction. Although the officer did not have probable cause to arrest Johnson at the time of their initial encounter, the trooper did have reasonable suspicion of criminal activity sufficient to authorize a brief detention for purposes of investigating why Johnson drove his car off the road and into a tree. See OCGA § 40-6-48 (1) (requiring driver to maintain lane); *State v. Thurmond*, 203 Ga. App. 230, 231-232 (416 SE2d 529) (1992) (accepting appellee's account of events, which include that he was told in a "forceful" voice by an officer to step outside his home, police nevertheless had articulable suspicion to briefly detain the appellee to investigate a hit and run accident). During that brief detention, the trooper developed probable cause for Johnson's arrest for DUI, and "since the officer[ ] had probable cause to arrest [Johnson] for the charged offenses, his arrest outside the premises of his home was constitutionally permissible." Id. at 232. It follows that the trial court did not err in denying Johnson's motion to suppress.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED OCTOBER 6, 2009 —
RECONSIDERATION DENIED OCTOBER 27, 2009

*Allen M. Trapp, Jr.,* for appellant.
*Douglas C. Vassy, Solicitor-General,* for appellee.